ROB BONTA, State Bar No. 202668
Attorney General of California
CHRISTINE E. GARSKE, State Bar No. 232879
Supervising Deputy Attorney General
DIANA ESQUIVEL, State Bar No. 202954
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7320
  Facsimile: (916) 322-8288
  E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendants State of California, by and through the California Highway Patrol, and Michael Simpson*

SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**KATE D.L. BROSSEAU, Deputy City Attorney (SBN 345596)**
kbrosseau@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA 95814-2608
Telephone: (916) 808-5346
Facsimile: (916) 808-7455
*Attorneys for Defendants CITY OF SACRAMENTO, et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **MARY ELLEN LENNOX,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF SACRAMENTO, et al.,**<br><br>Defendants. | No. 2:21-cv-02075-DAD-CSK<br><br>**DEFENDANTS SIMPSON'S AND PINOLA'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER DENYING SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Trial: February 18, 2025<br>Courtroom: 4 (15th Floor)<br>Judge: Honorable Dale A. Drozd<br>Action Filed: August 26, 2021 |

**TABLE OF CONTENTS**

Page

Notice of Motion ................................................................................................................. 1

Memorandum of Points and Authorities .......................................................................... 3

    I.      Introduction ........................................................................................... 3

    II.     Standard on Reconsideration ................................................................ 4

    III.    Argument ............................................................................................... 5

          A.    Defendants bring this motion within a reasonable time. ........................... 5

          B.    Reconsideration under Rule 60(b) is warranted. ......................................... 7

                1.    Summary of the Court's analysis for denying qualified immunity. ................................................................................ 8

                2.    Summary of the Ninth Circuit's analysis in *Hart*. ........................ 10

          C.    *Hart*'s application to the facts of this case warrants granting qualified immunity to Officers Pinola and Simpson on Plaintiff's § 1983 claims. ..................................................................................... 12

    IV.    Conclusion ............................................................................................. 14

i

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.K.H. ex rel. Landeros v. City of Tustin*
  837 F.3d 1005 (9th Cir. 2016) ......................................................................................... 8

*Bryan v. MacPherson*
  630 F.3d 805 (9th Cir. 2010) ........................................................................................... 9

*Bynoe v. Baca*
  966 F.3d 972 (9th Cir. 2020) ........................................................................................... 4

*Crawford v. City of Bakersfield*
  944 F.3d 1070 (9th Cir. 2019) ....................................................................................... 13

*Deorle v. Rutherford*
  272 F.3d 1272 (9th Cir. 2001) ................................................................................. passim

*Glenn v. Washington County*
  673 F.3d 864 (9th Cir. 2011) ................................................................................... 12, 13

*Graham v. Connor*
  490 U.S. 386 (1989) ......................................................................................................... 8

*Harris v. Roderick*
  126 F.3d 1189 (9th Cir. 1997) ......................................................................................... 9

*Hart v. City of Redwood City*
  120 F.4th 696 (9th Cir. Oct. 30, 2024) ......................................................................... 1, 3

*Hart v. City of Redwood City*
  99 F.4th 543 (9th Cir. 2024) .................................................................................... passim

*Harvest v. Castro*
  531 F.3d 737 (9th Cir. 2008) ........................................................................................ 4, 5

*Hayes v. County of San Diego*
  736 F.3d 1223 (9th Cir. 2013) ......................................................................................... 8

*Lal v. Cal.*
  746 F.3d 1112 (9th Cir. 2014) ....................................................................................... 11

*Lemoge v. United States*
  587 F.3d 1188 (9th Cir. 2009) ......................................................................................... 5

*McDowell v. Calderon*
  197 F.3d 1253 (9th Cir. 1999) (en banc) ........................................................................ 4

ii

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Nat. Res. Def. Council, Inc. v. Cnty. of L.A.*
    725 F.3d 1194 (9th Cir. 2013) .................................................................................. 6

*Navajo Nation v. Dep't of the Interior*
    876 F.3d 1144 (9th Cir. 2017) ............................................................................. 4, 5

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*
    624 F. Supp. 2d 1197 (E.D. Cal. 2009) ................................................................... 4

*School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*
    5 F.3d 1255 (9th Cir. 1993) ..................................................................................... 4

*Straw v. Bowen*
    866 F.2d 1167 (9th Cir. 1989) ................................................................................. 4

*U.S. v. Ruiz*
    935 F.2d 1033 (9th Cir. 1991) ................................................................................. 6

*Vos v. City of Newport Beach*
    892 F.3d 1024 (9th Cir. 2018) (*Vos*) ............................................................. passim

*White v. County of San Diego*
    No. 13-cv-01166-MMA-RBB, 2014 WL 9859196 (S.D. Cal. Dec. 12, 2014) ......... 8

**COURT RULES**

Fed. R. App. P. 41(c) .................................................................................................... 6

Fed. R. Civ. P. 60(c) ..................................................................................................... 5

iii

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Michael Simpson and Michael Pinola move, under Federal Rule of Civil Procedure 60(b)(1) and (6) and Local Rule 230(j), for reconsideration of the Court's August 16, 2024 order denying their respective motions for summary judgment on the grounds that they are entitled to qualified immunity. (ECF No. 61.)

The motion is made on the grounds that there was an intervening change in the controlling law such that the Court committed clear error in its August 15, 2024 ruling by denying Simpson and Pinola qualified immunity. On April 19, 2024, the Ninth Circuit issued its decision in *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) (*Hart*). However, *Hart* did not become final and binding until November 8, 2024, after the Ninth Circuit denied rehearing en banc. *See Hart v. City of Redwood City*, 120 F.4th 696 (9th Cir. Oct. 30, 2024). Under nearly identical facts, the Ninth Circuit in *Hart* reversed the district court's denial of qualified immunity, finding the officers' use of deadly force on a person rapidly approaching them while holding a knife did not violate clearly established law such that the officers were entitled to qualified immunity. To avoid manifest injustice and correct the mistake of law, the Court should reconsider its order in light of *Hart* and enter a new order granting Simpson's and Pinola's motions for summary judgment on the grounds of qualified immunity.

The motion is based on this notice, the attached Memorandum of Points and Authorities, all exhibits, pleadings and papers on file herein, including all those in connection with the State Defendants' Motion for Summary Judgment (ECF Nos. 45-47, 53), and such other matters and argument that may properly come before the Court.

As required under the Court's Standing Order in Civil Actions, the parties met and conferred prior to the filing of this motion. In September 2024, attorney Diana Esquivel, counsel for Defendant Simpson, put Plaintiff's attorney, Benjamin Levine, on notice that she intended to file a motion for reconsideration of the denial of qualified immunity. On November 11, 2024, shortly after *Hart* took effect, Ms. Esquivel sent Mr. Levine a detailed e-mail with basis for the for reconsideration. On November 20, 2024, Mr. Levine responded that he did not agree with

1

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment; Points & Authorities (2:21-cv-02075-DAD-CSK)

Defendant's position concerning reconsideration. Further, in the parties' Joint Pretrial Conference Statement, filed on December 3, 2024, Defendants maintained their intention to file the instant motion for reconsideration, to which Plaintiff maintained her objection at the Final Pretrial Conference on December 12, 2024. (ECF Nos. 65 at 14, 69.)

Dated: December 23, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
CHRISTINE E. GARSKE
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State of Cal. and Simpson*

Dated: December 23, 2024

SUSANA ALCALA WOOD,
City Attorney

*/s/ Kate D.L. Brosseau* (as authorized 12/23/24)

KATE D.L. BROSSEAU
Deputy City Attorney
*Attorneys for Defendants CITY OF SACRAMENTO, et al.*

SA2021305171
38650289.docx

2

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants Simpson and Pinola seek reconsideration of the Court's order denying them qualified immunity. The recent Ninth Circuit decision in *Hart* took effect on November 8, 2024, almost three months after the Court issued its August 16, 2024 order denying Defendants' motions for summary judgment. *Hart* supports a finding that the officers' use of deadly force on Decedent Jordan Zenka did not violate clearly established law, such that Simpson's and Pinola's respective motions should be granted as to Plaintiff's Fourth and Fourteenth Amendment claims.

On August 16, 2024, the Court issued its ruling on Defendants' Motions for Summary Judgment, granting and denying them in part. (ECF No. 61.) As relevant to this motion, the order denied Simpson and Pinola qualified immunity as it related to their use of lethal force against Decedent. (*Id*. 37:11-41:2.) While the motions were under submission, the Ninth Circuit issued the *Hart* opinion on April 19, 2024, addressing a claim of excessive force under substantially similar facts to those in this case.[1] However, the *Hart* mandate did not issue until November 8, 2024. *Hart v. City of Redwood*, 120 F.4th 696 (9th Cir. 2024). Thus, *Hart* did not become final and binding until November 8, such that this motion is timely.

In *Hart*, under a nearly identical set of facts, the Ninth Circuit overturned the district court's denial of qualified immunity, and in doing so, addressed the main factual point used in this matter to deny such immunity to Simpson and Pinola. The Court did not have the reasoning of *Hart* before it when the Court issued its ruling, and the Court's ruling now conflicts with controlling Ninth Circuit authority. The parties were unable to address *Hart* in their briefing, as it was not final and binding for almost three months after the Court issued its ruling. Defendants Pinola and Simpson now request that this Court reconsider its order, take *Hart* into account as it pertains to Plaintiff's 42 U.S.C. § 1983 claims against Officers Pinola and Simpson, and enter an order granting the officers' motions for summary judgment on the grounds of qualified immunity.

---

[1] The briefing on Defendants' motions was completed as of October 10, 2023 (ECF Nos. 44-53), and the deadline to file pretrial motions, based on the Court's Amended Scheduling Order, closed on September 15, 2023 (ECF No. 35).

3

## II.   STANDARD ON RECONSIDERATION

Federal Rule of Civil Procedure 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; and (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration is appropriate if there is an intervening change in the law or if the district court committed clear error or the initial decision was manifestly unjust. *School Dist. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Rule 60(b)(1)—which authorizes relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect"—permits a court to correct its own inadvertence, mistakes of fact, or mistakes of law. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1197, 1208 (E.D. Cal. 2009), aff'd sub nom. 672 F.3d 676 (9th Cir. 2012). Indeed, the Ninth Circuit has commented that the failure to correct a "clearly erroneous" order pursuant to a Rule 60(b) motion could constitute an abuse of discretion. *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999) (en banc). The moving party alleging a "mistake" under Rule 60(b)(1) "must show that the district court committed a specific error." *Straw v. Bowen*, 866 F.2d 1167, 1172 (9th Cir. 1989).

Rule 60(b)(6), which is a "catch-all" provision, is to be used "sparingly" as an equitable remedy to prevent "manifest injustice" and is to be utilized only in "extraordinary circumstances" to correct an erroneous judgement or order. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017); *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). Nevertheless, courts are well-positioned to conduct change-in-law inquiries and do so across a variety of legal contexts. *Bynoe v. Baca*, 966 F.3d 972, 982–83 (9th Cir. 2020) (determining whether an intervening case constituted a "clear and authoritative change in law" for purposes of Rule 60(b)(6)'s "extraordinary-circumstances requirement"). Rule 60(b)(6) relief normally will not be

4

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

granted unless the moving party is able to show both injury and circumstances beyond its control." *Navajo Nation*, 876 F.3d at 1173; *Harvey*, 531 F.3d at 749.

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge v. United States*, 587 F.3d 1188, 1196-97 (9th Cir. 2009), quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981). In seeking reconsideration of an order, Local Rule 230(j) requires a party to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."

### III. ARGUMENT

#### A. Defendants bring this motion within a reasonable time.

Whether a motion for reconsideration is brought within a reasonable time depends upon the facts of the case, taking into consideration: the interest in finality; the reason for delay; the practical ability of the litigant to learn earlier of the grounds relied upon; and prejudice to the other parties. *Lemoge*, 587 F.3d at 1196-97. Based on the facts of this case, these factors weigh in favor of finding the motion timely filed.

On May 27, 2022, Plaintiff filed the operative complaint, asserting nine separate claims against the Defendants, including claims for Excessive Force, Denial of Medical Care, and Substantive Due Process under 42 U.S.C. § 1983.[2] (ECF No. 21.) The Court's Amended Scheduling Order required the parties to file all pretrial motions, except motions for continuances, temporary restraining orders, or other emergency applications, no later than September 15, 2023. (ECF No. 35.) Defendants Pinola and Simpson filed their respective motions for summary judgment on September 15, 2023. (ECF Nos. 44-47.) The motions were fully briefed by October 10, 2023, and the Court vacated the hearing dates and took the motions under submission on

---

[2] Plaintiff subsequently dismissed the claim for denial of medical care. (ECF Nos. 62-63.)

October 12, 2023. (ECF Nos. 48-54.) On August 16, 2024, the Court issued its ruling on Defendants' motions, granting in part, as it related to Plaintiff's *Monell* claims, as well as to the claims against Defendant Tsverov's initial use of a taser. (ECF No. 61 at 55:2-56:15.) However, as it pertained to Plaintiff's other claims, including Simpson's and Pinola's qualified-immunity defense, the Court denied the Defendants' motions. (*Id.*)

While Defendants' motions were under submission, on April 19, 2024, the Ninth Circuit issued its opinion in *Hart*. (*Hart* Docket No. 22-17008, Dk. Entry No. 44, attached as Ex. A). On June 3, 2024, the *Hart* appellees filed a petition for rehearing en banc. (*Hart* Docket No. 22-17008, Dk. Entry No. 46.) The Ninth Circuit denied the petition for rehearing en banc on October 30, 2024. (*Hart* Docket No. 22-17008, Dk. Entry No. 53.) The mandate issued a week later on November 8, 2024. (*Hart* Mandate, attached as Ex. B.) No opinion of the Ninth Circuit becomes final until the mandate issues. *Nat. Res. Def. Council, Inc. v. Cnty. of L.A.*, 725 F.3d 1194, 1203 (9th Cir. 2013); Fed. R. App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]").

Here, the interest in finality of the order must give way to the significant interest in having cases decided on the accurate status of the law. When the Ninth Circuit's opinion issued in April 2024, *Hart* was expected to clarify *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) (*Deorle*) and *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) (*Vos*) on which the Court relied to deny Simpson and Pinola qualified immunity. While having a final order on the summary-judgment motions helps the parties prepare to proceed to trial or settlement, it is more important that the order accurately reflect whether the law was clear that Defendants' use of deadly force under the circumstances in this case were clearly established.

Defendants' minimal delay, if any, in filing this motion was reasonable and justified. Defendants could not have filed the motion sooner because *Hart* was not final and binding until November 8, 2024. The Ninth Circuit has cautioned that "no expectation of finality can attach during the period in which either party may petition for rehearing." *U.S. v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991). Thus, until the mandate issues, an opinion is not fixed as "settled Ninth Circuit law," and reliance on the opinion is a "gamble." *Id*. Defendants were not required to

6

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment; Points & Authorities (2:21-cv-02075-DAD-CSK)

"gamble" with an important issue like qualified immunity, and their decision to wait until the decision was final was reasonable even if Simpson's counsel was aware of the *Hart* decision around the time the Court issued its August 16, 2024 order.

There is no prejudice to Plaintiff from not seeking reconsideration sooner or not bringing the *Hart* decision to the Court's attention before the August 2024 order issued. Even if Simpson's attorney had been aware of *Hart* before August 16, 2024, bringing the opinion to the Court's attention would have been inconsequential because the decision was not yet binding on this Court, and the Court was not required to follow *Hart* before November 8, 2024. Further, Simpson's counsel put Plaintiff's attorneys on notice in September 2024 of her intent to seek reconsideration of the denial of qualified immunity. Once *Hart* became final, Simpson's counsel met and conferred with opposing counsel about the basis for her intended motion, and a month after opposing counsel disagreed with the basis for seeking reconsideration, Simpson and Pinola filed this motion. Lastly, this motion is limited to Simpson's and Pinola's qualified-immunity defense against Plaintiff's § 1983 claims. The parties still had to proceed with the litigation, including preparing the Joint Pretrial Statement and attending the Final Pretrial Conference, on Plaintiff's § 1983 claims against the other individual Defendants and the state-law claims that arise from the same operative facts. Thus, no party has been prejudiced by the timing of this motion.

For these reasons, Defendants' motion is timely, and the Court should consider it on the merits.

**B.     Reconsideration under Rule 60(b) is warranted.**

Reconsideration is appropriate under Rule 60(b)(1) and (6) because the August 16 order does not take into consideration *Hart*, such that the Court's analysis of the qualified-immunity defense amounts to a mistake of law, and without consideration of *Hart*, the Court's order amounts to manifest injustice because Defendants are being deprived of the Ninth Circuit's reasoning and analysis in *Hart* where officers facing substantially similar circumstances as Simpson and Pinola were found to be qualifiedly immune. Moreover, the Court's ruling on the

7

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

1  issue of qualified immunity is in conflict with the now-controlling Ninth Circuit authority in
2  *Hart*, such that the Court's order is clearly erroneous.

### 1. Summary of the Court's analysis for denying qualified immunity.

In its ruling on Defendants' motions for summary judgment, the Court examined Officers Pinola's and Simpson's use of lethal force against the Decedent, beginning with an analysis of the officer's actions under the objective reasonableness standard set out in *Graham v. Connor*. (ECF No. 61, at 17, 20; *see also Graham v. Connor*, 490 U.S. 386, 388 (1989).) As a first step in its analysis, the Court determined that the nature and quality of the officers' intrusion into Decedent's Fourth Amendment interest was extreme, as the Decedent had a "fundamental interest in his own life" and the officers' use of lethal force against that interest implicated the highest level of intrusion into that right. (ECF No. 61 at 20; *see also A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016), quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).) In so reasoning, the Court weighed this factor in favor of Plaintiff.

Next, the Court determined that the government's interest in using such level of force was largely dependent on whether or not the Decedent posed an immediate risk of harm to Simpson and Pinola. (ECF No. 61 at 25.) In considering the level of immediate threat the Decedent posed to the officers at the time lethal force was used, the Court noted that the distance between the Decedent and the officers was arguable as to whether the Decedent was within striking distance of the officers. In so holding that the level of threat posed to the officers was a triable issue of fact, the Court relied on *Hayes v. County of San Diego*, and *White v. County of San Diego*, both finding that an armed suspect within six to eight feet was arguably not within striking distance of an officer. (ECF No. 61 at 26; *Hayes v. County of San Diego*, 736 F.3d 1223, 1228, 1234 (9th Cir. 2013) [finding that there was a triable issue of whether excessive force was used where the individual shot was "walking towards the deputies" with a knife pointed down but was "not charging," and was six to eight feet away from the nearest officer]; *White v. County of San Diego*, No. 13-cv-01166-MMA-RBB, 2014 WL 9859196, at *6 (S.D. Cal. Dec. 12, 2014) [finding that when viewed in light most favorable to the plaintiff, eight feet away from the deputy was not

8

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

within striking distance].) Accordingly, the Court indicated that this factor weighed in Plaintiff's favor.

The Court then evaluated whether the Decedent was attempting to flee at the time of Simpson's and Pinola's use of lethal force. The Court agreed that the evidence established that the Decedent was moving towards the exit doors at the time lethal force was employed, acknowledging that at the time of his movements, he remained armed with a bread knife. (ECF No. 61 at 29.) The Court also acknowledged that, despite the Decedent's movements potentially resulting from the preceding deployment of less lethal force, Plaintiff did not argue that the Decedent was not attempting to flee, and as such, this factor weighed in favor of the use of some force on behalf of the Defendants, but fell short of finding that Decedent's fleeing supported a use of lethal force. (ECF No. 61 at 29-30; *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) ("Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others, or is fleeing and his escape will result in a serious threat of injury to persons.").)

The Court then looked to other relevant factors to examine the totality of the circumstances. (ECF No. 61 at 30; *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).) There, the Court considered the availability of less intrusive alternatives, such as the availability of other tasers, the potential use of warnings, as well as Officer Pinola's control over a police canine officer at the time the lethal force was employed. Thus, the Court determined that the mere availability of these alternate uses of force, in spite of the rapidly evolving situation, weighed in Plaintiff's favor. (ECF No. 61 at 31-32; *Vos*, 892 F.3d at 1033 (finding that excessive force was a triable issue where a 40mm less-lethal weapon, a taser, and a K-9 were available to officers and may have been effective in addressing the situation).)

Finally, the Court focused heavily on the Decedent's mental condition at the time of the incident, stating that the evidence on summary judgement established that the Defendant officers on-scene, including Simpson and Pinola, suspected the Decedent was experiencing a mental health crisis. (ECF 61 at 33-34.) The Court then determined that the government's interest in using force against the Decedent was diminished as a result of his mental health, relying on

9

*Deorle* and *Vos*. *See Deorle*, 272 F.3d at 1279-80; *Vos*, 892 F.3d at 1034 ("Finally, it is undisputed that Vos was mentally unstable, acting out, and at times invited officers to use deadly force on him. These indications of mental illness create a genuine issue of material fact about whether the government's interest in using deadly force was diminished."). Substantially relying on *Vos*, the Court in this matter determined that the Decedent's mental state, as well as the number of officers on-scene, would have signaled to all reasonable officers that the use of lethal force against the Decedent was impermissible. (ECF No. 61 at 38.) Consequently, on a weighing of all factors, the Court determined triable issues of material fact existed as to the Plaintiff's excessive force claim, and as such, denied qualified immunity as to nearly all force used, including, and most notably, the lethal force used by Officers Pinola and Simpson. (ECF 61 at 40-41.)

### 2.  Summary of the Ninth Circuit's analysis in *Hart*.

The Ninth Circuit's decision in *Hart* is factually similar to the matter at hand. There, the officers responded to a call for service regarding a suicidal man who was using a serrated utility knife to cut into his own throat. *Hart*, 99 F.4th at 545. The call for service detailed that the man was armed with a knife and slicing his throat and wrists with a knife. When officers arrived at the man's residence, they were met by Plaintiff, the man's wife, who directed them to the backyard. Officers determined that one officer would proceed into the yard prepared with lethal force in a "low ready" stance, and another officer prepared with less-lethal force. *Id*. at 546. Officers then located the man in the backyard still armed with a knife. *Id*.

Upon locating him armed in the yard, officers instructed the man to "drop the knife," but the man was unresponsive and remained armed. *Hart*, 99 F.4th at 545. Instead, the decedent approached officers still wielding the knife, closing the distance between them in roughly six seconds. *Id*. The officers did not warn the decedent that they would use either less lethal, nor lethal force prior to each officer firing their respective weapon. *Id*. The decedent was ultimately struck by one incomplete less lethal round, and three lethal rounds. *Id*. At the time decedent fell from his wounds, he was roughly five feet from one of the officers. *Id*. at 547. The decedent was pronounced dead upon arrival at the hospital following the incident.

1    Plaintiff then filed a complaint against the city and the officers involved, alleging claims under § 1983. *Hart*, 99 F.4th at 545. The Defendant officers brought a motion for summary judgment asserting qualified immunity which was largely denied except as to certain actions related to the less lethal officer's actions. *Id*. In denying qualified immunity, the district court relied on *Deorle,* stating that, "Hart had committed no offense, was suicidal, was not a flight risk, did not pose a threat to others, and a dispute exists regarding whether an adequate warning that force would be used by the officers was given." 272 F.3d 1272, 1285 (9th Cir. 2001).

The *Hart* district court further relied on *Vos* for the proposition that shooting the decedent may have been unreasonable regardless of whether or not he was armed since he may have been mentally unstable. Vos, 892 F.3d at 1033. In review of the facts the district court set forth in *Hart*, the Ninth Circuit held that the lower court erred in denying qualified immunity as to the use of lethal force. *Hart*, 99 F.4 at 548. As a preliminary matter, the Ninth Circuit concluded that the decedent was, in fact, an immediate threat to the officers. *Id*. at 549-550, citing *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir. 2005) and *Lal v. Cal.*, 746 F.3d 1112, 1117 (9th Cir. 2014) (stating that individuals wielding edged weapons and even blunt force objects posed immediate threats to officers for the purposes of qualified immunity). Further, in spite of the district court's reliance on the decedent's mental state, as in *Deorle* and *Vos*, the Ninth Circuit indicated that the plaintiff there had not satisfied their burden of countering Defendant's claim of qualified immunity with a showing that the law surrounding use of lethal force under the circumstances was sufficiently clear. *Id*. at 555.

The Ninth Circuit distinguished both *Deorle* and *Vos* from Hart as a factual matter on the bases of time, plan of action, and compliance on behalf of the armed decedent or suspect. *Id*. (distinguishing *Deorle* as a result of the 30-40 minute time gap between response and the use of force, as well as the suspect's general compliance; distinguishing *Vos* as a result of a time gap, as well as the simultaneous nature of less lethal and lethal force being deployed). *Hart* further distinguished plaintiff's reliance on *S.R. Nehad v. Browder*, on the basis that the decedent in that matter was not seen actively wielding a weapon nor harming himself as was the decedent in *Hart*. 929 F.3d 1125, 1130 (9th Cir. 2019).

11

Accordingly, in *Hart*, the Ninth Circuit determined that the decedent's conduct in refusing to comply with the officers' instructions to relinquish his weapon, his wielding of a knife as he rapidly approached officers, and his evidence of self-harm were factually sufficient to place officers in reasonable fear for their safety or the safety of others, thereby justifying the use of lethal force *regardless* of the officers' awareness of the decedent's mental state. *Hart*, 99 F.4 at 555, citing *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019); distinguishing *Glenn v. Washington County*, 673 F.3d 864, 874–75 (9th Cir. 2011) (stating that the decedent in *Hart* did not remain stationary while armed).

### C. *Hart*'s application to the facts of this case warrants granting qualified immunity to Officers Pinola and Simpson on Plaintiff's § 1983 claims.

Reasonableness of any particular use of force must be viewed from the perspective of an officer on-scene, not through the lens of 20/20 hindsight vision. *Hart*, 99 F.4th at 549. Further, the Plaintiff bears the burden of showing that an officer's perception of reasonable force lies outside the bounds of clearly established law in the face of the assertion of qualified immunity. *Id*. at 555. The Court here, as the *Hart* district court did, determined that Officers Simpson and Pinola were not entitled to qualified immunity for their use of lethal force against the Decedent. (ECF No. 61 at 40-41.) The crux of *Hart* is that the level of threat or harm posed to law enforcement by an armed individual does not rely on the individual's precise striking distance, nor on the individual's mental status at the time in which the force is employed. *Hart*, 99 F.4th at 549-50.

The Court here, like the *Hart* district court, relied substantially on cases such as *Vos*, *Deorle*, *Glenn*, and *S.B.*, culminating in a denial of qualified immunity as to lethal force. *Hart*, 99 F.4th at 549-50. Importantly, while the facts of *Hart* are substantially similar to the present matter, the case law relied on by this Court and the *Hart* district court is also nearly identical. Like *Hart*, Officers Pinola and Simpson were faced with an individual wielding an edged weapon—a 10-inch, serrated bread knife capable of at least causing substantial wounds to the Decedent. (ECF 61 at 5; CDUF ¶ 3; PSAFC ¶ 12; PSAFS ¶ 12.) In *Hart*, the decedent was also armed with an edged weapon, a utility knife, and had been witnessed and reported engaging in

12

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment;
Points & Authorities (2:21-cv-02075-DAD-CSK)

self-harm with the knife he wielded. *Hart*, 99 F.4 at 545. The call for service in *Hart*, much like the incident here, indicated that the decedent had sliced his neck and arms with the knife prior to the officers' arrival on-scene. *Id*.

Additional similarities between *Hart* and this case can be drawn. Here, the Decedent was told to "drop the knife" on numerous occasions, but ultimately, he remained unresponsive to officers' commands. (ECF No. 61 at 6; VG at 01:02–23:15.) The similarity to the decedent in *Hart* who also remained armed with a knife throughout the incident, and who refused to respond to officers, is striking. *Hart*, 99 F.4 at 546. Following their unresponsiveness to the officers' commands, the decedents in both *Hart* and here approached the officers while armed. *Id*.

Further, Officers Pinola and Simpson were armed with lethal force while other officers on-scene were armed with less-lethal weapons. What is more, here, the officers only deployed lethal force after other officers had deployed ineffective less lethal force against the Decedent and as a direct result of the Decedent's rapid movements toward Simpson and Pinola while armed. In *Hart*, the Ninth Circuit found that the decedent's similarly quick approach towards officers while armed, specifically after remaining unresponsive to officers' commands, was enough to entitle the shooting officer to qualified immunity for the use of lethal force. *Hart*, 99 F.4th at 555. Further, as should be the case here, the mental health status of the *Hart* decedent did not diminish the level of threat he posed to the officers on-scene. *Id*.

As clarified by the Ninth Circuit, cases that this Court relied on, such as *Vos*, *Deorle*, and *Glenn*, in denying Simpson and Pinola qualified immunity are readily distinguishable from the immediate and grave danger the officers faced at Decedent's hand. *Hart*, 99 F.4th at 555. Consequently, the Decedent's mental status should not be a significant nor controlling factor over the lethal force employed, as Decedent Zenka, like the *Hart* decedent, approached officers quickly and while armed. *Id*. at 546; *Crawford*, 944 F.3d at 1078. Accordingly, because the facts and legal precedent in *Hart* and the present matter are substantially similar, the Court should enter a new order finding that Officers Pinola and Simpson are entitled to qualified immunity for their use of lethal force against the Decedent.

## IV. CONCLUSION

In view of the Ninth Circuit's recent decision in *Hart*, reconsideration of the Court's August 16, 2024 order denying Defendants Simpson's and Pinola's summary-judgment motions on the basis of qualified immunity is appropriate. *Hart* became binding and final after the Court issued its ruling, and therefore did not consider the Ninth Circuit's reasoning and analysis, which is on all fours with this case. Both *Hart* and this case involved knife-wielding individuals who disobeyed the officers' commands to drop the knife and quickly approached the officers' location while still holding the knife, resulting in the use of lethal force. There is no substantial difference between the facts in *Hart* and this case to warrant contrary results. To allow the August 16, 2024 order to stand is a mistake of law, amounts to manifest injustice, and is clearly erroneous. The Court should therefore grant this motion and enter a new order granting summary judgment in favor of Officers Pinola and Simpson on Plaintiff's § 1983 claims.

Dated:  December 23, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
CHRISTINE E. GARSKE
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State of Cal. and Simpson*

Dated:  December 23, 2024

SUSANA ALCALA WOOD,
City Attorney

*/s/ Kate D.L. Brosseau* (as authorized 12/23/24)

KATE D.L. BROSSEAU
Deputy City Attorney
*Attorneys for Defendants CITY OF SACRAMENTO, et al.*

SA2021305171
38650289.docx
14

Def. Simpson & Pinola's Notice of Motion and Motion for Reconsideration Denying Summary Judgment; Points & Authorities (2:21-cv-02075-DAD-CSK)