**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
Benjamin S. Levine, Esq. (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:  (818) 347-3333
Facsimile:  (818) 347-4118

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELLEN LENNOX, individually and as successor in interest to decedent Jordan Zenka,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 2:21-cv-02075-DAD-CSK<br><br>Assigned to:<br>*Honorable Dale A. Drozd*<br>*Honorable Mag. Judge Chi Soo Kim*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING SUMMARY JUDGMENT**<br><br>Date:         None set<br>Time:        None set<br>Courtroom: 4, 15th Floor<br>Trial Date:  February 18, 2025 |

## **TABLE OF CONTENTS**

OBJECTION TO NOTICE OF MOTION AND MOTION ................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.    INTRODUCTION .................................................................................. 1

II.   LEGAL STANDARD ............................................................................ 3

III.  RECONSIDERATION IS NOT WARRANTED OR APPROPRIATE ..... 4

    A.  Defendants' Motion Was Not Made Within a Reasonable Time .......................................................................... 4

    B.  Defendants Have Suffered No Injury Justifying Reconsideration Because *Hart* Merits No Change to the Court's Summary Judgment Order .................................................................................. 7

IV.  CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Cottrell, Inc.*,
  No. 1:16-cv-00840-DAD-SAB, 2018 WL 10372944
  (E.D. Cal. Feb. 13, 2018) ...............................................................................3, 4

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ........................................................................................16

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001)..........................................................................14

*Fust v. Gilead Sciences, Inc.*,
  No. 2:23-cv-2853-WBS-DB, 2024 WL 1367353
  (E.D. Cal. Apr. 1, 2024)....................................................................................3

*Harvest v. Castro*,
  531 F.3d 737 (9th Cir. 2008)....................................................................4, 7, 8

*Hayes v. Cnty. of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) .........................................................................12

*Kona Enters. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000).........................................................................3, 7

*Lemoge v. United States*,
  587 F.3d 1188 (9th Cir. 2009)..............................................................4, 5, 7, 8

*Liston v. Cnty. of Riverside*,
  120 F.3d 965 (9th Cir. 1997).............................................................................9

*N.E.M. v. City of Salinas*,
  761 F. App'x 689 (9th Cir. 2019)) ...................................................................12

*Robinson v. Solano County*,
  278 F.3d 1007 (9th Cir. 2002) .........................................................................16

*S.B. v. Cnty. of San Diego*,
   864 F.3d 1010 (9th Cir. 2017)................................................................................12
*S.R. Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019)................................................................................13
*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*,
   624 F. Supp. 2d 1197 (E.D. Cal. 2009)..............................................................4, 6
*Title v. United States*,
   263 F.2d 28 (9th Cir. 1959).....................................................................................4
*United States v. Wells*,
   29 F.4th 580 (9th Cir. 2022)..................................................................................16
*White v. Cnty. of San Diego*,
   2014 WL 9859196 (S.D. Cal. Dec. 12, 2014)..............................................11, 12

**Statutes**
Fed. R. App. 40(a)(1).......................................................................................................5
Fed. R. App. P. 35(c) ......................................................................................................5
Fed. R. App. P. 41(b).......................................................................................................5
Fed. R. Civ. P. 60(c) .......................................................................................................7
Rule 60(b) .......................................................................................................................4

**Rules**
L.R. 230(m)(2) ............................................................................................................4, 5

**OBJECTION TO NOTICE OF MOTION AND MOTION**

Plaintiff objects to Defendants' notice of motion and motion on the ground that the motion was not noticed for a hearing date that falls within 35 days of the filing of the motion, or for any hearing date, in violation of Local Rule 230(b) and this Court's Standing Order. [Dkt. 29 at 1-2.] Plaintiff further objects to Defendants' motion on the ground that the law and motion deadline set by the Court in this case for September 15, 2023 [Dkt. 35] has passed, and no request or motion to modify that deadline has been filed. Either ground merits summary denial of the motion; the latter ground merits denial with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Following extensive briefing by the parties on two defense motions for summary judgment, on August 16, 2024, this Court issued a 56-page ruling partially granting and partially denying the motions (the "Order"). Thirty days passed, and no defendant submitted notice of his intention to appeal any aspect of the Court's Order. Now, months later and mere weeks before trial, Defendants Simpson and Pinola ("Defendants") accuse the Court of legal error in denying them summary judgment because the Court's Order did not address a Ninth Circuit opinion, *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024), which had been issued four months before the Order and to which Defendants had never even attempted to alert the Court. Defendants claim that they chose to wait for the approximately eight months following *Hart*'s issuance before making any mention of it to the Court because they wanted to see whether that case would be taken up *en banc*, despite this having less than a one-quarter percent chance of occurring.

Defendants' complete lack of diligence merits summary denial of their motion on the ground that it is untimely. Not only did Defendants unduly delay notifying the Court of the appellate decision they now claim is crucial to their defense of this case

and further delay filing the instant motion thereafter, but they also have not sought any continuance of or exception to the Court's law and motion deadline—or made any effort to explain their failure to do so—despite having been aware of that deadline since it was imposed in February 2023.

Having foregone or missed their opportunity to seek direct appeal of this Court's Order, Defendants now seek to relitigate core issues the Order addressed and, Plaintiff believes, to attempt to bootstrap any merits-based denial of the instant motion to the original Order and on that basis seek an untimely interlocutory appeal of this Court's denial of qualified immunity and summary judgment. If allowed, such a ploy would disrupt the fast-approaching trial schedule for which the parties and the Court have been preparing, and for which the bereaved Plaintiff in this case has now waited for more than four years. Defendants should not be given the means to take advantage of their own lack of diligence, further justifying an order that denies the instant motion on timeliness grounds alone, without addressing the merits of whether—had it been timely brought to the Court's attention—the April 2024 *Hart* decision impacts Defendants' claim of entitlement to qualified immunity.

But even should the Court elect to address Defendants' motion on the merits, the motion still must be denied because *Hart* cannot justify a grant of qualified immunity in this case. Despite that case involving a man who had harmed himself and was holding a knife, the *Hart* court expressly distinguished it from prior Ninth Circuit decisions upon which this Court relied in denying qualified immunity—including one that this Court noted presented evidence that was "very similar to evidence" in this case—on the ground that the entire incident in *Hart* occurred in a span of 23 seconds from the time the officers there arrived at the scene to the time they fatally shot the decedent. Here, like the cases upon which this Court relied and which the *Hart* court distinguished, Defendants had over twenty minutes to plan a coordinated approach to engaging with Mr. Zenka, contributing to this Court's determination that using deadly force was not reasonable. Other significant

differences further demonstrate Defendants' lack of entitlement to qualified immunity, including that the *Hart* decedent was shot when he was nearer to the officers, that he was not significantly outnumbered and surrounded by officers (as Mr. Zenka was), that an officer's attempted use of a Taser against that decedent was ineffective and failed to incapacitate the decedent (whereas here it was effective and did incapacitate Mr. Zenka), and many others. Accordingly, and as explained below, even if the Court elects to consider the merits of Defendants' motion, despite this being unwarranted here, the motion still must be denied.

## II. LEGAL STANDARD

A "court's orders on dispositive motions are not intended to serve merely as tentative rulings. A motion for reconsideration of such an order is an 'extraordinary remedy' that should be used 'sparingly in the interests of finality and the conservation of judicial resources.'" *Fust v. Gilead Sciences, Inc.*, No. 2:23-cv-2853-WBS-DB, 2024 WL 1367353, at *1 (E.D. Cal. Apr. 1, 2024) (quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Accordingly, "[r]elief under [Federal] Rule [of Civil Procedure] 60 '. . . is to be utilized only where extraordinary circumstances' exist" to "prevent manifest injustice." *Baker v. Cottrell, Inc.*, No. 1:16-cv-00840-DAD-SAB, 2018 WL 10372944, at *1 (E.D. Cal. Feb. 13, 2018) (quoting *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008)).

To be entitled to this "extraordinary" form of relief, the movant must seek it "within a reasonable time," Fed. R. Civ. P. 60(c), "taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge v. United States*, 587 F.3d 1188, 1196-97 (9th Cir. 2009) (citation omitted). The movant also "must demonstrate both injury and circumstances beyond his control." *Baker*, 2018 WL 10372944 at *1 (quoting *Harvest*, 531 F.3d at 749); *see San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1197, 1208 (E.D. Cal. 2009) (A motion to reconsider is not "justified on the basis of new

evidence which could have been discovered prior to the court's ruling."). "Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute for appeal." *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959) (citations omitted); *cf. id.* ("Nor is a change in the judicial view of applicable law after a final judgment sufficient basis for vacating such judgment entered before announcement of the change."). A Rule 60(b) motion "is addressed to the sound legal discretion of the district court, and will not be disturbed on appeal except for abuse of discretion." *Id.*

### III.  RECONSIDERATION IS NOT WARRANTED OR APPROPRIATE

#### A. Defendants' Motion Was Not Made Within a Reasonable Time

As Defendants acknowledge, the Ninth Circuit's opinion in *Hart* was issued on April 19, 2024, nearly four months before this Court issued its Order on August 16, 2024. [Dkt. 61 ("Op.").] Defendants then waited for more than four more months before filing the instant motion, on December 23, 2024, after the Court had already held its final pretrial conference and while the parties were in the midst of preparing for the February 18, 2025, jury trial, less than two months away. Not only did Defendants have "the practical ability . . . to learn [far] earlier of the grounds" upon which they now rely in seeking reconsideration, *Lemoge*, 587 F.3d at 1197, but they also do not dispute (and even tacitly acknowledge) that their counsel was in fact aware of the *Hart* decision yet intentionally chose to wait until December to inform the Court. (Motion for Reconsideration ("Mot.") at 11.[1])

Although *Hart* was decided after briefing of Defendants' motions for summary judgment had ended, this Court's procedures specify that "[a]ny party may file a notice of supplemental authority to bring the Court's attention to a relevant judicial opinion issued after the date that party's opposition or reply was filed." L.R. 230(m)(2). However, no notice of supplemental authority was filed, and Defendants'

---

[1] Citations to ECF-filed documents in this brief use the ECF pagination, rather than the document's own internal pagination.

belief in *Hart*'s relevance was only brought to the Court's attention for the first time on December 3, 2024, via the parties' Joint Pretrial Conference Statement [Dkt. 65]—despite the parties having filed a Joint Notice of Trial Readiness in September, in which Defendants made no reference to *Hart* or to their intent to file the instant motion [Dkt. 64]—and to Plaintiff's counsel's attention for the first time on November 11, 2024 (and then only with respect to Defendant Simpson).

Significantly here, this Court's Local Rule regarding notices of supplemental authority makes no reference to whether a mandate has issued following an intervening appellate decision, whether panel or *en banc* rehearing of that decision is being pursued, or whether the decision is otherwise "final." *See* L.R. 230(m)(2). And for good reason: Parties to an appeal are allowed a minimum of 21 days to seek rehearing before a mandate issues, with the possibility of extension of that deadline by the appeals court. Fed. R. App. P. 35(c), 40(a)(1), 41(b); Ninth Cir. Rule 41-2. As the *Hart* docket shows, the appeals court's decision to deny rehearing may take months longer and may follow briefing by the parties. (*See* Mot., Ex. A [Dkt. 71-1].) However, once Defendants' motion for summary judgment was taken under submission, this Court's order on that motion could have issued at any time. Thus, had Defendants been diligent, they would have made the Court aware of the *Hart* decision as soon as they or their counsel became aware of it, so as to provide the Court an opportunity to consider whether *Hart* might impact the pending order. *See Title*, 263 F.2d at 31; *San Luis & Delta-Mendota Water Auth.*, 624 F. Supp. 2d at 1208. The Court would then have had the ability to make an informed decision regarding *Hart*'s potential relevance and, if the Court believed it necessary, to delay a ruling until the mandate had issued.[2]

---

[2] Defendants' failure to timely notify the Court is striking given that they now argue that "in April 2024, *Hart* was expected to clarify [significant Ninth Circuit decisions on qualified immunity in shooting cases] on which the Court relied to deny Simpson and Pinola qualified immunity," and that they stridently argue for the "importan[ce of] the [Court's] order accurately reflect[ing] whether the law was clearly established." (Mot. at 10.)

By delaying notifying this Court of the *Hart* decision—whether because they claim to have been waiting for a mandate to issue or otherwise—Defendants needlessly created the risk that the Court would issue an order on summary judgment that did not address *Hart*, and Defendants' claimed need to now seek reconsideration of the order based on *Hart* is thus of their own making. Taking such a wait-and-see approach does not demonstrate diligence or respect for the Court's and other parties' time and resources, but rather shows the opposite.[3] Defendants' "reason for delay" here was a poor one, *Lemoge*, 587 F.3d at 1197, and hardly demonstrates "extraordinary circumstances" that were "beyond [their] control" as is required for reconsideration, *Harvest*, 531 F.3d at 749.

Especially given Defendants' unreasonable delay, "the interests of finality and the conservation of judicial resources," *Kona Enters.*, 229 F.3d at 890, also weigh against reconsideration. If Defendants believed this Court's Order constituted "clear error" as they now argue (Mot. at 5), they could have appealed the Order to the Ninth Circuit, but they chose not to. Entertaining Defendants' motion—even if the *Hart* decision had actually postdated this Court's Order, whereas here the opposite is true—would also risk creating a slippery slope, raising the question of how long after a key ruling an unsatisfied party ruling may seek to revisit and relitigate it based on a new appellate decision that party claims is relevant to an already-decided motion. *See Title*, 263 F.2d at 31.

---

[3] Moreover, reliance on *en banc* review in particular being granted in any case, as Defendants indicate they were waiting for here, is an extreme gamble—far more so than timely advising the Court of *Hart* would have been, as Defendants argue. (Mot. at 10-11 (citing *United States v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991).) In the year spanning from October 2022 through September 2023, the Ninth Circuit decided a mere ten (10) cases *en banc*, representing approximately 0.18% of the 5,420 cases the Ninth Circuit decided during that period. U.S. Courts, Judicial Business 2023 Tables, Table B-10, *U.S. Courts of Appeals—Cases Terminated on the Merits After Oral Arguments or Submission on Briefs, by Circuit, During the 12-Month Period Ending September 30, 2023* (September 30, 2023), *available at* https://www.uscourts.gov/data-news/data-tables/2023/09/30/judicial-business/b-10. Thus, to the extent that Defendants waited to see whether the Ninth Circuit would grant *en banc* review in *Hart* before notifying this Court of the *Hart* panel decision upon which they now rely in their motion, this approach was particularly unreasonable.

Now, the Court has already held a final pretrial conference and has adjusted its calendar to accommodate this case proceeding to trial on February 18, 2025, for which the parties are currently preparing. Granting Defendants' requested relief could upend this schedule weeks before trial, as Plaintiff would be forced to decide whether to seek immediate appeal of an order granting qualified immunity to the key Defendants in this case—who shot and killed her son—potentially delaying trial of this action for one to two years, or to proceed with a limited trial and then pursue a second trial of her Fourth Amendment claims against Defendants. Either would also substantially prejudice Plaintiff, *see Lemoge*, 587 F.3d at 1197, who has now waited more than four years since the date of the incident to go to trial.

Because of Defendants' significant and unjustified delay in bringing this motion, filed mere weeks before trial, and the prejudice to finality, the Court's resources, and to Plaintiff that would result if the motion were granted, Defendants' motion should be denied on these grounds alone, and the merits need not and should not be addressed. *See* Fed. R. Civ. P. 60(c); *Lemoge*, 587 F.3d at 1197; *Harvest*, 531 F.3d at 749; *Title*, 263 F.2d at 31.

### B. Defendants Have Suffered No Injury Justifying Reconsideration Because *Hart* Merits No Change to the Court's Summary Judgment Order

Because Defendants' motion is untimely, the merits of their motion should not be addressed. But even if the Court is nevertheless inclined to address the merits of Defendants' motion, the motion must still be denied because *Hart* warrants no change to the Court's determination that a genuine dispute exists regarding the reasonableness of Defendants' use of deadly force due to significant differences between this case and *Hart*, and because as a matter of law *Hart* cannot affect the Court's determination that the unlawfulness of Defendants' use of deadly force was clearly established at the time of this incident.

In its Order, this Court recognized that the reasonableness of any use of force under the Fourth Amendment is fact-intensive and thus "is ordinarily a question of

fact for the jury." (Op. at 18 (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).) And as this Court concluded, after undertaking a thorough review of the evidence and resolving disputed facts in Plaintiff's favor, existing Ninth Circuit precedent showed both that a reasonable jury could conclude Defendants' use of deadly force was unreasonable and that the unconstitutionality of using deadly force under these circumstances was clearly established. (*Id.* at 20-23, 25-35, 37-40 (citations omitted).)

*Hart* should not impact this analysis because details that were critical to that opinion are wholly different from key details in this case—upon which this Court relied in its Order—despite the simple similarity of officers dealing with a man who had harmed himself with a knife. In *Hart*, two officers arrived at the home of the plaintiffs, who were the decedent's wife and children; encountered the decedent's wife, who was covered in blood; and quickly walked alongside the house and into "the backyard at the frantic urging of Plaintiff." *Hart v. City of Redwood City*, 99 F.4th 543, 545, 549 (9th Cir. 2024). On arrival, the officers had determined that one would be the designated Taser officer and the other would provide lethal cover; a third officer was en route with a 40mm launcher but would not arrive until after the shooting. *Id.* at 545 & n.1. Immediately after the two officers entered the backyard, which was a mere 17 seconds from the time the officers arrived on the scene, the decedent, who was holding a knife, began quickly approaching the officers and crossed the backyard, from approximately 37 feet away from the officers "to within a few feet of the officers in less than 5.9 seconds." *Id.* at 546-47, 556. As the decedent approached the officers, he held the knife in a raised position, pointed toward them. *Id.* at 548-59. While the decedent was still approaching and was approximately 17 feet away, the designated officer fired the Taser at the decedent; however, one of the Taser's two prongs missed, so the Taser did not fully connect and had no effect. *Id.* at 547. The cover officer then shot the decedent when the decedent further advanced to within 8-10 feet away, and the decedent fell and landed

at one officer's feet. *Id.* at 546. Based on the circumstances the officers in *Hart* faced, the *Hart* plaintiffs' own police expert testified in deposition that the decedent posed an "imminent threat" to the officers when he was moving toward them. *Id.* at 547 n.2, 551-52.

      Here, Defendants faced significantly different circumstances than the officers in *Hart* did, all of which weigh against a determination that Defendants' use of deadly force was reasonable as a matter of law and in favor of upholding the Court's existing summary judgment order. At the time Defendants used deadly force against Mr. Zenka, there were 22 officers on scene, at least 15 of whom surrounded Mr. Zenka on three sides, compared to the two officers who encountered the decedent in *Hart*. (Op. at 6; *see id.* at 24-25 (concluding the number of officers surrounding Mr. Zenka weighed against a finding that Mr. Zenka posed an immediate threat of harm) (citing *Vos v. City of Newport Beach*, 892 F.3d 1024, 1032 (9th Cir. 2018); *White v. Cnty. of San Diego*, 2014 WL 9859196, at *6 (S.D. Cal. Dec. 12, 2014)).) Although the Court can certainly do its own math, it bears emphasizing that the officers here outnumbered the officers in *Hart* by a factor of eleven to one. *See Vos*, 892 F.3d at 1032 (explaining that the fact that the officers "outnumbered Vos eight to one" weighed against a determination that deadly force was reasonable). When Defendants arrived at the grocery store, nobody besides Mr. Zenka was bloodied, and nobody frantically urged them to approach the area where Mr. Zenka was standing. *See Hart*, 99 F.4th at 545, 549.

      Further, at the time Mr. Zenka was moving toward the exit doors, Mr. Zenka was holding the bread knife at navel-level, and this Court found that the direction the knife was pointing was disputed, although the City Defendants (including Defendant Pinola) agreed with Plaintiff that the knife was pointed downward. (Op. at 12; *see also* Op. at 7 (noting Mr. Zenka never "raise[d] the bread knife above his head").) Moreover, whereas the *Hart* decedent began approaching the officers immediately after they encountered him, Mr. Zenka had stood in the same area in the produce

section for about twenty minutes and only began moving after officers began approaching him and firing weapons at him from the south and from the east, even though Defendants were aware this could cause Mr. Zenka to move in their direction. (*Id.* at 9-11.)

When Defendants ultimately fired lethal rounds at Mr. Zenka, Mr. Zenka was approximately 10-15 feet away from them, so he was further away than the *Hart* decedent was from the officers there and was not within striking distance, such that this Court determined a reasonable jury could find Mr. Zenka posed no immediate threat of death or serious bodily injury. (*Id.* at 13, 25-26 (citing *White*, 2014 WL 9859196, at *6; *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228, 1234 (9th Cir. 2013); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017); *N.E.M. v. City of Salinas*, 761 F. App'x 689, 699-700 (9th Cir. 2019)).) And even this greater distance between Mr. Zenka and Defendants was partly a result of Defendants themselves advancing, closing the gap between themselves and Mr. Zenka. (Op. at 10 ("As the contact team advanced, defendants Simpson and Pinola began moving forward, closer to decedent Zenka and blocking off his potential path to the supermarket doors, despite nobody having told them to do so.").) Unlike the decedent in *Hart*, when Mr. Zenka fell to the ground, he did not fall in Defendants' direction, and he landed well away from where they stood, further showing he posed no immediate threat of death or serious bodily harm when Defendants fired. (Decl. of Benjamin S. Levine in Support of Plaintiff's MSJ Opp., Ex. 14, at 23:04-08.) And Plaintiff's expert certainly did not concede that Mr. Zenka posed an immediate threat of harm to anyone, let alone an immediate threat of death or serious bodily harm.

Yet other details distinguish this case from *Hart*, making clear that *Hart* would not have affected this Court's decision even had Defendants timely brought it to the Court's attention. Significantly, approximately 23 minutes elapsed from the time the first officer encountered Mr. Zenka in the grocery store until the time of the shooting, and Defendants had taken the positions they were in when they fired well

beforehand. (*See* Op. at 5 (noting Officer Gray arrived at approximately 6:44 a.m.), 10-11 (noting deadly force was used at approximately 7:07 a.m.).) By contrast, that the entire encounter in *Hart* lasted a matter of seconds was a key basis for the *Hart* court's grant of qualified immunity to the officers, and that court distinguished prior decisions, including those upon which this Court relied in its Order, on that basis:

> Plaintiffs argue that "constitutional violations" are routinely found "when the shooting of an armed suspect happens quickly." As Plaintiffs point out, this may be true when the "officers themselves unnecessarily create their own sense of urgency," or where the police were quick to shoot despite having significant time to plan their actions." But here, the officers responded to an emergency situation involving an armed individual. They were immediately urged to help by the victim's "very, very upset" and "very animated" wife, who directed them to Hart's location.

*Hart*, 99 F.4th at 550-51 (first citing *S.R. Nehad v. Browder*, 929 F.3d 1125, 1135 (9th Cir. 2019), then citing *Vos*, 892 F.3d at 1034) (alteration adopted). Here, the officers *did* "unnecessarily create their own sense of urgency" by approaching Mr. Zenka and by firing less-lethal weapons at him from multiple directions when he had been standing still and was not threatening any officer, and they were also "quick to shoot despite having significant time to plan their actions." *Id.*

*Hart* further distinguished *Vos*, in part on the basis that officers in *Vos* had a 40mm launcher available to them, and further emphasized that the *Vos* officers had had plenty of time to handle the situation in a planned and deliberate manner:

> Our court in *Vos* held that "a reasonable jury could have found that the force employed was greater than was reasonable under the circumstances." In doing so, we relied in part on both the fact that one of the officers was armed with a 40-millimeter less-lethal firearm and the extended timeline available to "coordinate a plan for their use of force." Here, while an officer armed with a 40-millimeter less lethal weapon was en route, he did not arrive before the officers engaged with Hart. And unlike the situation in *Vos*, in which police officers had twenty minutes to develop a tactical plan, Officers Gomez and Velez were responding to an emergency suicide situation in which time was of the essence. They had only seventeen seconds from when they arrived on the scene until Hart advanced towards them with a knife.

*Id.* at 556 (quoting *Vos*, 892 F.3d at 1033-34) (alterations adopted). This case is dramatically more similar to *Vos* in that here, officers had a variety of less-lethal weapons available to them—not only 40mm launchers, but also beanbag shotguns,

Tasers, and a K9—and had more than twenty minutes to formulate a plan by which to take Mr. Zenka safely into custody without resorting to deadly force. (*See* Op. at 38 ("When viewed in the light most favorable to plaintiff, the evidence on summary judgment in this case is very similar to evidence before the court in *Vos*.")); *see also Hart*, 99 F.4th at 556 (distinguishing *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), on the basis that "the officers [there] had 'thirty to forty minutes to plan their course of action,' while Gomez and Velez were responding quickly to an emergency . . . situation") (quoting *Deorle*, 272 F.3d at 1276).)

Also unlike *Hart*, where one officer attempted to subdue the decedent with a Taser but the Taser was ineffective, here Plaintiff presented evidence showing that Defendant Tsverov's first discharge of the Taser *was* effective, including a direct concession by Defendants' own expert, and this Court acknowledged that this Taser discharge may have preceded the first gunshots—as Plaintiff argued it did—such that Defendants would have been firing at Mr. Zenka when he was already incapacitated and falling to the ground. (Op. at 11, 13; *see* Pl.'s Opp. to Defs.' Mots. for Summ. J. [Dkt. 48] at 12 (explaining and presenting evidence showing that some or all of Defendants' shots were fired as Mr. Zenka was falling and/or had already fallen to the ground).) Whereas the threat the *Hart* decedent posed was greater because the Taser had failed to subdue him, here Mr. Zenka posed no threat at the time Defendants fired because the Taser had successfully subdued him. *Compare id. with Hart*, 99 F.4th at 551 (explaining that "Plaintiffs' assertion that Hart was falling when the officers first deployed their weapons . . . has no support in the record"). The *Hart* court also determined that there, it was not feasible for the shooting officer to issue a verbal warning before firing due to the speed of the incident, 99 F.4th at 555, whereas this Court concluded that whether a warning was feasible here is genuinely disputed given the longer timeframe of this incident and the fact that Defendants anticipated Mr. Zenka would move toward the store's exit, which they intentionally stood in front of so as to block it. (Op. at 10, 32-33 (citing *Browder*,

-12-
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

1  929 F.3d at 1136-37).) And whereas *Hart* found that the plaintiffs there had
2  presented no nonspeculative evidence that the officers' pre-shooting conduct
3  contributed to the unreasonable nature of the use of deadly force, 99 F.4th at 554,
4  here the Court recognized that approaching Mr. Zenka and using "overwhelming
5  less-lethal" force against him when he stood by himself in the produce area, as well
6  as failing to utilize available less-lethal alternatives when Mr. Zenka was moving
7  toward the exit doors, suggested the officers' overall course of conduct was
8  unreasonable. (*See* Op. at 9-11, 29, 31-32, 34-35.)

As the foregoing makes clear, the facts of this case are unlike many of the key facts upon which *Hart* relied in deeming that shooting reasonable, and they position this case much nearer to other Ninth Circuit decisions that *Hart* distinguished, in particular *Vos*. But, to whatever extent that *Hart* appears to contradict or take a different analytical approach to the question of reasonableness and qualified immunity than did the prior Ninth Circuit decisions upon which this Court relied in in its Order, *Hart* could not and did not overrule those decisions or otherwise impact their precedential value, as *Hart* was not reviewed *en banc* (*see* Mot., Ex. A), which would have been necessary in order for it to impeach *Vos* and other key cases. *See United States v. Wells*, 29 F.4th 580, 587 n.3 (9th Cir. 2022) ("[A]s a panel we are bound by the prior published decisions of our court . . . . [u]nless [they are] overturned by the en banc court or by the Supreme Court . . .") (collecting cases).

Nor can *Hart*, which was decided in April of 2024, have any bearing on whether the law governing Defendants' conduct at the time of this incident in December of 2020 was clearly established, even if it were sufficiently similar to this case to otherwise impact the Court's Order. "Because the focus is on whether the officer[s] had fair notice that [their] conduct was unlawful, reasonableness is judged against the backdrop of the law *at the time of the conduct*." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (emphasis added). Later-decided cases thus "could not have given fair notice to [officers] and are of no use in the clearly

established inquiry." *Id.* at 200 n.4. As the incident here occurred in December of 2020, "the law at that time must be [the Court's] guide." *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc). Because *Hart* was decided more than three years later, it cannot affect whether the unconstitutionality of Defendants' use of lethal force was clearly established by then-existing law. *Brosseau*, 543 U.S. at 198, 200 n.4; *Robinson*, 278 F.3d at 1015.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for reconsideration outright as untimely. Defendants waited until weeks before trial to bring this motion, without justification, and should not be afforded an opportunity to seek a disruptive interlocutory appeal at this late stage, particularly where they elected to forego any direct appeal of the Court's summary judgment Order. Although consideration of the merits is not warranted as explained above, should the Court nevertheless be inclined to address Defendants' motion on the merits, the motion should be denied because *Hart* does not control this case.

Dated: January 6, 2025                         LAW OFFICES OF DALE K. GALIPO

                                               By:    */s/ Benjamin S. Levine*
                                                      Dale K. Galipo
                                                      Renee V. Masongsong
                                                      Benjamin S. Levine
                                                      Attorneys for Plaintiff