1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARY ELLEN LENNOX,                      No. 2:21-cv-02075-DAD-CSK

12                 Plaintiff,

13         v.                                 FINAL PRETRIAL ORDER

14    CITY OF SACRAMENTO, et al.,

15                 Defendants.

16

17         On December 12, 2024, the court conducted a final pretrial conference in this case.

18    Attorneys Dale K. Galipo, Renee Masongsong, and Benjamin Levine appeared as counsel for

19    plaintiff; Deputy Attorney General Diana Esquivel appeared as counsel for defendants State of

20    California and Michael Simpson; Deputy City Attorneys Sean Richmond and Kate Brosseau

21    appeared as counsel for defendants City of Sacramento, Michael Pinola, Travis Hunkapiller,

22    Ruvmin Tsverov, Robert Lindner, Angel Espinoza, Joseph Swaleh, Jason Finnicum, and John

23    Helmich.  Having considered the parties' objections to the tentative pretrial order, the court issues

24    this final pretrial order which will govern the trial of this action.

25         Plaintiff Lennox brings this civil rights action against the defendants asserting claims

26    arising under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment and

27    deprivation of the familial relationship in violation of the Fourteenth Amendment, as well as state

28    law claims for battery, negligence, and violation of California's Bane Act.

1

I.    JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(3), and 1367.  Jurisdiction is not contested.

Venue is proper pursuant to 28 U.S.C. § 1391(b).  Venue is not contested.

II.    JURY

Both parties have demanded a jury trial.  The jury will consist of eight jurors.[1]

III.    UNDISPUTED FACTS

1.    The alleged incident occurred on December 13, 2020.

2.    The alleged incident occurred at a Bel Air grocery store located on Arena Boulevard in the Natomas area of Sacramento, California.

3.    At approximately 6:35 A.M. on December 13, 2020, the Sacramento Police Department ("SPD") received a call that an individual, later identified as decedent Jordan Zenka, was in a single-vehicle collision at the Bel Air grocery store.

4.    Officers from the SPD and an officer from the California Highway Patrol ("CHP") responded to the Bel Air grocery store and encountered Mr. Zenka in the produce area of the Bel Air grocery store.

5.    SPD Officers Michael Pinola, Ruvmin Tsverov, Joseph Swaleh, Jason Finnicum, John Helmich, Robert Lindner, and Angel Espinoza were at the scene during the alleged incident.

6.    SPD Sergeant Michael Hunkapiller was at the scene during the alleged incident.

7.    At approximately 6:47 A.M., CHP dispatch broadcasted a code-3 backup request from the SPD regarding the alleged incident involving Mr. Zenka.

8.    CHP Officer Michael Simpson responded to the code-3 and arrived at the Bel Air grocery store at 6:53 A.M.  He advised CHP dispatch that there were several SPD units on scene, and he observed an SPD officer trying to communicate with Mr. Zenka.

9.    SPD Sergeant Michael Hunkapiller was the commanding officer for the SPD officers during the incident.

---

[1]  The court may increase the number of jurors selected if test positivity rates for COVID 19 within California exceed 5% at the time trial commences.

10.     Sergeant Hunkapiller then directed the contact team (including Helmich and Finnicum) to use "overwhelming less-lethal" force to take Mr. Zenka into custody.

11.     SPD Officer Pinola and CHP Officer Simpson were positioned near the inside west entrance door of the store, near the self-checkout counter, with the K-9 unit to Simpson's right.

12.     SPD Officer Ruvmin Tsverov fired a Taser for three cycles at Mr. Zenka during the incident.

13.     SPD Officer Ruvmin Tsverov fired a Taser for one cycle prior to Mr. Zenka being struck by lethal rounds.

14.     SPD Officer Ruvmin Tsverov fired a Taser for two cycles after Mr. Zenka had been struck by lethal rounds.

15.     SPD Officer Michael Pinola and CHP Officer Simpson fired rounds from their handguns at Mr. Zenka.

16.     SPD Officer Michael Pinola fired four lethal rounds at Mr. Zenka.

17.     CHP Officer Simpson fired six rounds at Mr. Zenka.

18.     SPD Officer Michael Pinola did not give Mr. Zenka a verbal warning prior to firing his lethal shots.

19.     CHP Officer Simpson did not give Mr. Zenka a verbal warning prior to firing his weapon.

20.     Mr. Zenka was struck by seven lethal rounds.

21.     SPD Officers Angel Espinoza, Robert Lindner, and John Helmich fired 40 millimeter rounds at Mr. Zenka during the incident.

22.     SPD Officer Angel Espinoza fired one 40 millimeter round at Mr. Zenka prior to Mr. Zenka being struck by lethal rounds.

23.     SPD Officer Robert Linder fired one 40 millimeter round at Mr. Zenka before Mr. Zenka had been struck by lethal shots.

24.     SPD Officer Robert Linder fired one 40 millimeter round at Mr. Zenka after Mr. Zenka had been struck by lethal shots.

25.     SPD Officer John Helmich fired one 40 millimeter round at Mr. Zenka after Mr. Zenka had been struck by lethal shots.

26.     SPD Officers Jason Finnicum and Joseph Swaleh fired beanbag shotgun rounds at Mr. Zenka during the incident.

27.     SPD Officer Jason Finnicum fired four beanbag rounds at Mr. Zenka prior to Mr. Zenka being struck by lethal shots.

28.     SPD Officer Joseph Swaleh fired one beanbag round at Mr. Zenka prior to Mr. Zenka being struck by lethal shots.

29.     Mr. Zenka did not physically injure anyone other than himself during the incident.

30.     Mr. Zenka died at the scene.

31.     Plaintiff Mary Ellen Lennox is Mr. Zenka's mother.

32.     At all relevant times, SPD Officers Michael Pinola, Ruvmin Tsverov, Joseph Swaleh, Jason Finnicum, John Helmich, Robert Lindner, Angel Espinoza, and Travis Hunkapiller acted under color of state and local law.

33.     At all relevant times, CHP Officer Simpson acted under color of state law.

34.     At all relevant times, SPD Officers Michael Pinola, Ruvmin Tsverov, Joseph Swaleh, Jason Finnicum, John Helmich, Robert Lindner, Angel Espinoza, and Travis Hunkapiller acted within the course and scope of their employment with the City of Sacramento.

35.     At all relevant times, CHP Officer Simpson acted within the course and scope of his employment with the CHP.

IV.     <u>DISPUTED FACTUAL ISSUES</u>

1.     Whether a reasonable officer would have formed the impression that Mr. Zenka posed an immediate threat of harm to others at the time officers fired 40 millimeter rounds, beanbag shotgun rounds, or Taser rounds at him.

2.     Whether a reasonable officer would have formed the impression that Mr. Zenka posed an immediate threat of death or serious bodily injury to others at the time SPD Officer Michael Pinola and CHP Officer Michael Simpson fired lethal rounds at him.

/////

4

3.      Whether the officers issued appropriate verbal commands to Mr. Zenka before using force against him.

4.      Whether it was feasible for the officers to verbally warn Jordan Zenka that force would be used against him before using force against him.

5.      Whether it was feasible for CHP Officer Simpson to verbally warn Mr. Zenka that lethal force would be used against him before using such force.

6.      Whether the officers' conduct and tactics prior to the use of lethal force against Mr. Zenka were appropriate and reasonable.

7.      Whether the commands and tactical plan issued by SPD Officer Travis Hunkapiller to subordinate officers were appropriate and reasonable.

8.      Whether the tactical plan formulated by SPD Officer Travis Hunkapiller was adequately communicated to other officers.

9.      Whether officers should reasonably have anticipated that Jordan Zenka would attempt to exit the store if less-lethal rounds were fired at him.

10.      Whether CHP Officer Simpson's use of lethal force was objectively reasonable under the totality of the circumstances.

11.      Whether CHP Officer Simpson's conduct shocked the conscience.

12.      Whether CHP Officer Simpson acted negligently in using lethal force against Mr. Zenka, including any pre-shooting tactics.

13.      Whether defendants are immune, including under qualifiedly immune, from plaintiff's claims.

14.      Whether defendants are entitled to qualified immunity from plaintiff's 42 U.S.C. § 1983 claims.

15.      Whether defendants are immune from plaintiff's state-law claims under California Government Code §§ 815.2, 815.4, 820.2, 820.4, 820.8, 845.8, California Penal Code §§ 148, 197, 198.5, 241, 243, 245, 417, 692, 834a, 835, 835a, 836.5(b), and California Civil Code §§ 43, 50.

/////

5

16. Whether defendant officers engaged in appropriate conduct and tactics leading to their uses of force, including deadly force, against Mr. Zenka.

17. Whether defendant officers were required to and failed to appropriately consider and account for the fact that Mr. Zenka appeared to be experiencing a mental health crisis.

18. Whether defendant officers were required to and failed to issue appropriate commands to Mr. Zenka.

19. Whether defendant officers were required to and failed to issue a verbal warning that force would be used.

20. Whether defendant officers were required to and failed to appropriately designate officers for less-lethal and lethal cover and appropriately position those officers.

21. Whether Mr. Zenka posed an immediate threat of harm to others at the time less-lethal force was used.

22. Whether Mr. Zenka posed an immediate threat of death or serious bodily injury to others at the time lethal force was used.

23. Whether defendants' response or use of force was excessive or negligent.

24. Whether defendants' actions in responding to the incident and to Mr. Zenka's actions were reasonable considering the totality of the circumstances.

25. Whether at all times during the defendants' response Mr. Zenka was covered in blood and appeared seriously injured.

26. Whether at all times during the incident, Mr. Zenka remained armed with a bread knife and refused to respond to officers' requests, instructions, or commands to release that bread knife.

27. Whether the use of less-lethal force by defendants was reasonable considering Mr. Zenka's actions and his need for medical attention.

28. Whether when Mr. Zenka moved toward the doors where defendant Officers Pinola and Simpson were stationed, Mr. Zenka remained armed with a bread knife and closed the distance between himself and the officers quickly.

/////

6

29.     Whether defendant Officers Pinola and Simpson had reasonable fear for their own safety and for the safety of those outside the doors when Mr. Zenka approached.

V.      DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*.  The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.  The parties anticipate filing the motions *in limine* listed below.  Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**.  Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

Plaintiff's Motions *in Limine*

1.      To exclude information unknown to the officers on scene at the time of the incident, including any drug and alcohol use by Mr. Zenka prior to the incident and on the day of the incident (including the toxicology report and rehab records), and writings obtained after the shooting.

2.      To exclude any argument that Mr. Zenka was attempting to commit "suicide by cop."

3.      To exclude any post-incident findings by any agency.

Defendants' Motions *in Limine*

1.      To preclude any witness from arguing, opining, or stating that Mr. Zenka's behavior was due to mental illness.

2.      To limit or preclude the testimony of plaintiff's expert, Roger Clark.

3.      To admit evidence of Mr. Zenka's substance abuse, including alcohol, for comparative fault purposes.

4.      To preclude any evidence or reference to the State's indemnification of an adverse judgment.

/////

7

5.      To preclude any unqualified witness from testifying about Mr. Zenka's injuries and cause of death.

6.      To preclude any evidence of defendant CHP Officer Simpson's disciplinary, litigation, and adverse-employment history.

7.      To preclude plaintiff from showing the jury or introducing into evidence photographs of Mr. Zenka's body and autopsy.

8.      To be permitted to bring into the courthouse and show the jury, for demonstrative purposes, a replica or substantially similar bread knife as the one Mr. Zenka held in his hand.

VI.      SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6), the parties have provided the special factual information pertaining to this action.

VII.      RELIEF SOUGHT

1.      Plaintiff seeks wrongful death damages and survival damages.

2.      Plaintiff seeks punitive damages.

3.      Plaintiff seeks reasonable attorneys' fees and costs of suit.

4.      Defendants seek judgment in their favor and costs of suit.

VIII.      POINTS OF LAW

The claims and defenses asserted in this action arise under both federal and state law. All of plaintiff's claims are brought against all the defendants.

1.      The elements of, standards for, and burden of proof in a Fourth Amendment excessive use of force claim.

2.      The elements of, standards for, and burden of proof in a Fourteenth Amendment deprivation of the familial relationship claim.

3.      The elements of, standards for, and burden of proof in a battery claim under California law.

4.      The elements of, standards for, and burden of proof in a negligence claim under California law.

/////

8

5.      The elements of, standards for, and burden of proof in a claim for violation of the

Bane Act (Cal. Civ. Code § 52.1).

6.      The elements of, standards for, and burden of proof in an affirmative defense of

qualified immunity against plaintiff's § 1983 claims and immunity under

California law against plaintiff's state-law claims.

Trial briefs addressing the points of law implicated by these remaining claims shall be

filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY

ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT

BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

IX.     ABANDONED ISSUES

1.      Plaintiff has abandoned the claim of denial of medical care in violation of the

Fourth Amendment

2.      Plaintiff has abandoned the claim of municipal liability based on an

unconstitutional custom, policy, or practice.

3.      Plaintiff has abandoned the claim of municipal liability based on ratification.

4.      Defendants State of California and Michael Simpson have abandoned the

following affirmative defenses asserted in their answer to the second amended complaint:  (1)

third affirmative defense (statute of limitations); (2) seventeenth affirmative defense (*Heck* bar);

(3) eighteenth affirmative defense (unclean hands); (4) nineteenth affirmative defense (waiver);

(5) twenty-fifth affirmative defense (claim presentation); (6) twenty-sixth affirmative defense

(claim variance); (7) thirty-second affirmative defense (mandatory joinder); and (8) thirty-third

affirmative defense (uncertainty).

X.      WITNESSES

Joint witnesses are those listed in **Attachment A.**  Plaintiff's witnesses are those listed in

**Attachment B**.  Defendants' witnesses are those listed in **Attachment C**.  Each party may call

any witnesses designated by the other.

/////

9

A.   **The court does not allow undisclosed witnesses to be called for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

  (1)   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

  (2)   The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

B.   Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

  (1)   The witness could not reasonably have been discovered prior to the discovery cutoff;

  (2)   The court and opposing parties were promptly notified upon discovery of the witness;

  (3)   If time permitted, the party proffered the witness for deposition; and

  (4)   If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XI.   <u>EXHIBITS, SCHEDULES, AND SUMMARIES</u>

Joint exhibits are listed in **Attachment D**.  Plaintiff's exhibits are listed in **Attachment E**. Defendants' exhibits are listed in **Attachment F**.  No exhibit shall be marked with or entered into evidence under multiple exhibit numbers.  All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.  Plaintiff's exhibits shall be listed numerically, and defendants' exhibits shall be listed alphabetically.

The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.  The parties must exchange exhibits no

later than **28 days before trial**.  Any objections to exhibits shall be filed no later than **14 days**

**before trial**.  The final exhibit binders shall be delivered to the court by **the Thursday before**

**the trial date.**  In making any objection, the party is to set forth the grounds for the objection.  As

to each exhibit which is not objected to, no further foundation will be required for it to be

received into evidence, if offered.

      **The court does not allow the use of undisclosed exhibits for any purpose, <u>including</u>**

**<u>impeachment or rebuttal</u>, unless they meet the following criteria:**

    A.    The court will not admit exhibits other than those identified on the exhibit lists

           referenced above unless:

           (1)    The party proffering the exhibit demonstrates that the exhibit is for the

                  purpose of rebutting evidence that could not have been reasonably

                  anticipated, or

           (2)    The exhibit was discovered after the issuance of this order and the

                  proffering party makes the showing required in paragraph B, below.

    B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly

           inform the court and opposing parties of the existence of such exhibits by filing a

           notice on the docket so that the court may consider their admissibility at trial.  The

           exhibits will not be received unless the proffering party demonstrates:

           (1)    The exhibits could not reasonably have been discovered earlier;

           (2)    The court and the opposing parties were promptly informed of their

                  existence;

           (3)    The proffering party forwarded a copy of the exhibits (if physically

                  possible) to the opposing party. If the exhibits may not be copied the

                  proffering party must show that it has made the exhibits reasonably

                  available for inspection by the opposing parties.

XII.   <u>DISCOVERY DOCUMENTS</u>

    Counsel must lodge the sealed original copy of any deposition transcript to be used at trial

with the Clerk of the Court no later than **14 days before trial**.

Plaintiff has indicated the intent to use the following discovery documents at trial:

1.    Transcript of Angel Espinoza's deposition

2.    Transcript of Jason Finnicum's deposition

3.    Transcript of John Helmich's deposition

4.    Transcript of Travis Hunkapiller's deposition

5.    Transcript of Robert Lindner's deposition

6.    Transcript of Michael Pinola's deposition

7.    Transcript of Michael Simpson's deposition

8.    Transcript of Joseph Swaleh's deposition

9.    Transcript of Ruvmin Tsverov's deposition

10.    Transcript of Greg Meyer's deposition

Defendants have indicated the intent to use the following discovery documents at trial:

1.    Transcript of Greg Meyer's deposition, taken on 7/13/2023

2.    Greg Meyer's May 30, 2023 expert report

3.    Transcript of Mary Lennox's deposition, taken on 2/9/2023

4.    Transcript of George Cardena's deposition, taken on 5/17/2023

5.    Transcript of Michael Simpson's deposition, taken on 9/22/2022

6.    Transcript of Roger Clark's deposition, taken on 8/1/2023

7.    Roger Clark's May 31, 2023 expert report

8.    Plaintiff's responses to defendant State of California's interrogatories, set one

9.    Plaintiff's responses to defendant Simpson's interrogatories, set one

10.    Plaintiff's responses to defendant Simpson's interrogatories, set two

11.    Plaintiff's responses to defendant State of California's request for production of documents, set one

12.    Plaintiff's responses to defendant State of California's request for production of documents, set two

13.    Plaintiff's responses to defendant Simpson's request for production of documents, set one

XIII.   FURTHER DISCOVERY OR MOTIONS

On December 23, 2024, defendants Simpson and Pinola filed a joint motion for reconsideration of this court's August 16, 2024 order addressing their motion for summary judgment.  Discovery and law and motion are closed under the scheduling order issued in this case.

XIV.   STIPULATIONS

None

XV.   AMENDMENTS/DISMISSALS

None.

XVI.   SETTLEMENT

The parties have not yet participated in a court-ordered settlement conference, but believe a settlement conference may be useful in bringing this matter to resolution.  As explained at the pretrial conference, the undersigned requires that all civil cases be set for settlement conference before proceeding to trial.  Accordingly, the parties have contacted Magistrate Judge Chi Soo Kim to schedule a settlement conference and it appears that a settlement conference before a magistrate judge of this court will be scheduled for later this month.

XVII.   JOINT STATEMENT OF THE CASE

The parties have agreed at the final pretrial conference to the following joint statement of the case to be read to the prospective jurors:

> This case arises out of the fatal shooting of Jordan Zenka that took place at a Bel Air grocery store in the Natomas area of Sacramento, California, on December 13, 2020.
>
> The plaintiff is Mary Ellen Lennox; she is the mother of Jordan Zenka, the decedent.  Plaintiff claims that SPD Officer Michael Pinola and CHP Officer Michael Simpson used excessive and unreasonable force against Jordan Zenka.  Plaintiff also claims that Ruvmin Tsverov, Robert Linder, Angel Espinoza, Joseph Swaleh, Jason Finnicum, and John Helmich used excessive and unreasonable force against Jordan Zenka and were negligent when they deployed less-lethal weapons at Mr. Zenka, including Tasers, beanbag shotguns, and 40 millimeter rounds.  Plaintiff also claims that Travis Hunkapiller was negligent and is liable as a supervisor for his role in planning and directing the other officers' course of conduct. Plaintiff seeks damages as permitted by law.

The defendants are SPD Officers Michael Pinola, Ruvmin Tsverov, Robert Linder, Angel Espinoza, Joseph Swaleh, Jason Finnicum, John Helmich, and Travis Hunkapiller, the City of Sacramento, CHP Officer Michael Simpson, and the State of California, by and through the California Highway Patrol.  The defendants deny plaintiff's claims and contend that the use of force against decedent Jordan Zenka was reasonable and justified because he failed to drop the bread knife he held in his hand before and during defendants' use of force.

XVIII. SEPARATE TRIAL OF ISSUES.

Defendants request a two-phased trial, with punitive damages bifurcated.  Plaintiff did not request bifurcation but is agreeable to bifurcating the trial as to the amount of punitive damages. As the court explained at the pretrial conference, the bifurcation that defendants request is the court's standard practice in § 1983 cases like this one.  The court will bifurcate the punitive damages claim as follows.  The court will submit the question of defendants' liability, including potential liability for punitive damages, to the jury in the first phase of trial.  If the jury makes the requisite finding that punitive damages are available, then the trial will proceed to a second phase on the question of the amount of punitive damages, if any, to be awarded.

XIX.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

XX.   ATTORNEYS' FEES

Plaintiff will seek attorneys' fees and costs if it prevails.

XXI.   TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

None.

XXII.  MISCELLANEOUS

None.

XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is scheduled for **February 18, 2025**, at 9:00 a.m. in Courtroom 4 before the Honorable Dale A. Drozd.  Trial is anticipated to last 5–7 court days.  The parties are directed to Judge Drozd's Standing Order in Civil Actions, available on his webpage on the court's website.

Counsel are directed to contact Pete Buzo, courtroom deputy, at (916) 930-4016, no later than one week prior to trial to ascertain the status of the trial date.  If a conflict with the jury trial

14

1  date as set should emerge for counsel, counsel is directed to contact Pete Buzo promptly to inform
2  the court.

3  XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

4        The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be
5  limited to fifteen minutes of supplemental jury *voir dire*.

6        The court directs counsel to meet and confer in an attempt to generate a joint set of jury
7  instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before**
8  **trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to
9  agree on all or some instructions and verdicts, their respective proposed instructions are due **14**
10  **days before trial**.

11        Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed
12  or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before**
13  **trial**; all blanks in form instructions should be completed and all brackets removed.

14        Objections to proposed jury instructions must be filed **7 days before trial**; each objection
15  shall identify the challenged instruction and shall provide a concise explanation of the basis for
16  the objection along with citation of authority.  When applicable, the objecting party shall submit
17  an alternative proposed instruction on the issue or identify which of his or her own proposed
18  instructions covers the subject.

19  XXV. TRIAL BRIEFS

20        As noted above, trial briefs are due **7 days before trial**.

21        The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil
22  Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this
23  action and shall be modified only to prevent manifest injustice.

24        IT IS SO ORDERED.

25  Dated:   **January 9, 2025**

26            DALE A. DROZD
          UNITED STATES DISTRICT JUDGE

27

28

**ATTACHMENT A**

Joint Witness List

1. Plaintiff Mary Ellen Lennox

2. Defendant SPD Officer Angel Espinoza

3. Defendant SPD Officer Jason Finnicum

4. Defendant SPD Officer John Helmich

5. Defendant SPD Officer Travis Hunkapiller

6. SPD Officer Ben Gray

7. Defendant SPD Officer Robert Lindner

8. Defendant SPD Officer Michael Pinola

9. Defendant CHP Officer Michael Simpson

10. Defendant SPD Officer Joseph Swaleh

11. Defendant SPD Officer Ruvmin Tsverov

**ATTACHMENT B**

Plaintiff's Witness List

1.  Roger Clark

**ATTACHMENT C**

Defendant's Witness List

1. Greg Meyer

2. George Cardenas

3. Ivan Tien

4. Britney Huggins

5. Lynnette Barron-Perez

6. Zoila Barrientoz

7. Savanna Lam-Hoover

8. Frank Lugo

9. Keng-Chih Su, M.D.

10. Chad Kolpacoff

11. Matt Barnick

12. Kurt Fischer

13. David Charron

14. Stephen McClain

15. Matthew Lemons

16. Martin Gennuso

17. J. Ward

18. Brhett Steppig

**ATTACHMENT D**

Joint Exhibit List

| Exh. | Description |
|------|-------------|
| JX-1 | Interview of Angel Espinoza with transcript for identification |
| JX-2 | Two photographs of Angel Espinoza's 40 millimeter launcher |
| JX-3 | Interview of Jason Finnicum with transcript for identification |
| JX-4 | Five Jason Finnicum charting photographs |
| JX-5 | Two photographs of Jason Finnicum's beanbag shotgun |
| JX-6 | Interview of John Helmich with transcript for identification |
| JX-7 | Two photographs of John Helmich's 40 millimeter launcher |
| JX-8 | Interview of Travis Hunkapiller with transcript for identification |
| JX-9 | Five Travis Hunkapiller charting photographs |
| JX-10 | Interview of Robert Lindner with transcript for identification |
| JX-11 | Five Robert Lindner charting photographs |
| JX-12 | Three photographs of Robert Lindner's 40 millimeter launcher |
| JX-13 | Interview of Michael Pinola with transcript for identification |
| JX-14 | Two photographs of Michael Pinola's firearm |
| JX-15 | Five Michael Pinola charting photographs |
| JX-16 | Six photographs of Michael Simpson's firearm and ammunition |
| JX-17 | Photographs of Officer Simpson, round count, and patrol vehicle taken by CHP and Bates stamped as AGO537-AGO574 |
| JX-18 | Interview of Joseph Swaleh with transcript for identification |
| JX-19 | Two photographs of Joseph Swaleh's beanbag shotgun |
| JX-20 | Interview of Ruvmin Tsverov with transcript for identification |
| JX-21 | Five Ruvmin Tsverov charting photographs |
| JX-22 | Photograph of Ruvmin Tsverov's Taser |

| JX-23 | Video recording from the body-worn camera of Michael Pinola with stills |
|---|---|
| JX-24 | Video recording from the body-worn camera of Travis Hunkapiller with stills |
| JX-25 | Video recording from the body-worn camera of Ruvmin Tsverov with stills |
| JX-26 | Video recording from the body-worn camera of Jason Finnicum with stills |
| JX-27 | Video recording from the body-worn camera of Ben Gray with stills |
| JX-28 | Video recording from the Bel-Air Grocery Store surveillance camera titled "PTZ#7" and Bates stamped as AGO363 |
| JX-29 | Video recording from the Bel-Air Grocery Store surveillance camera titled "Front End" and Bates stamped as AGO365 |
| JX-30 | Video recording from the Bel-Air Grocery Store surveillance camera titled "Self Check Backside" and Bates stamped as AGO367 |
| JX-31 | Scene photographs of the interior grocery store with the following file names:<br>• 20-362291_045.JPG_9168523<br>• 20-362291_048.JPG_9168532<br>• 20-362291_049.JPG_9168535<br>• 20-362291_050.JPG_9168538<br>• 20-362291_054.JPG_9168550<br>• 20-362291_055.JPG_9168553<br>• 20-362291_057.JPG_9168559<br>• 20-362291_058.JPG_9168562<br>• 20-362291_059.JPG_9168565<br>• 20-362291_064.JPG_9168580<br>• 20-362291_103.JPG_9168697<br>• 20-362291_317.JPG_9169339<br>• 20-362291_318.JPG_9169342<br>• 20-362291_320.JPG_9169348<br>• 20-362291_324.JPG_9169360 |

| | | |
|---|---|---|
| | | • 20-362291_326.JPG_9169366 |
| | | • 20-362291_327.JPG_9169369 |
| | | • 20-362291_328.JPG_9169372 |
| | | • 20-362291_330.JPG_9169378 |
| | | • 20-362291_331.JPG_9169381 |
| | | • 20-362291_337.JPG_9169399 |
| | | • 20-362291_345.JPG_9169423 |
| | | • 20-362291_346.JPG_9169426 |
| | | • 20-362291_349.JPG_9169435 |
| | | • 20-362291_350.JPG_9169438 |
| | | • 20-362291_383.JPG_9169537 |
| | | • 20-362291_385.JPG_9169543 |
| | | • 20-362291_395.JPG_9169573 |
| | | • 20-362291_403.JPG_9169597 |
| | | • 20-362291_409.JPG_9169615 |
| | | • 20-362291_433.JPG_9169687 |
| | | • 20-362291_437.JPG_9169699 |
| | | • 20-362291_438.JPG_9169702 |
| | | • 20-362291_439.JPG_9169705 |
| | | • 20-362291_483.JPG_9169837 |
| | | • 20-362291_500.JPG_9169888 |
| JX-32 | Tsverov Taser Download (15 pages) | |
| JX-33 | Scene overhead map Bates stamped as AGO299 and AGO300 | |
| JX-34 | Sacramento Police Department General Order 580.06 — De-Escalation and Planned Response | |
| JX-35 | Sacramento Police Department General Order 580.10 — Conducted Energy Device | |

1

| JX-36 | Funeral and Burial Expenses (BATES PLTF 0002-0004) |
|-------|----------------------------------------------------|

**ATTACHMENT E**

Plaintiff's Exhibit List

| Exh. | Description |
|------|-------------|
| 1 | Interview of Michael Simpson with transcript for identification |
| 2 | Five Michael Simpson Charting Photos |
| 6 | Scene Photographs — Interior Grocery Store with file names as follows: |

- 20-362291_043.JPG_9168517
- 20-362291_044.JPG_9168520
- 20-362291_046.JPG_9168526
- 20-362291_047.JPG_9168529
- 20-362291_051.JPG_9168541
- 20-362291_052.JPG_9168544
- 20-362291_053.JPG_9168547
- 20-362291_090.JPG_9168658
- 20-362291_091.JPG_9168661
- 20-362291_315.JPG_9169333
- 20-362291_316.JPG_9169336
- 20-362291_321.JPG_9169351
- 20-362291_322.JPG_9169354
- 20-362291_323.JPG_9169357
- 20-362291_325.JPG_9169363
- 20-362291_335.JPG_9169393
- 20-362291_336.JPG_9169396
- 20-362291_417.JPG_9169639
- 20-362291_418.JPG_9169642
- 20-362291_436.JPG_9169696

| | |
|---|---|
| 7 | Relevant portions of the Sacramento County Coroner autopsy report (pp. 210–216, 220–224; AGO140–146) |
| 8 | Photographs of Jorden Zenka (BATES PLTF 0005, 0007, 0009–0012, 0016, 0019–0021, 0024–0025) |
| 9 | Photographs of Jordan Zenka with plaintiff (BATES PLTF 0006, 0008, 0013–0015, 0017–0018, 0025–0031) |
| 10 | Notes and cards from Jordan Zenka to plaintiff (BATES PLTF 0022–0023) |
| 11 | Relevant portions of Peace Officer Standards and Training ("POST") Learning Domains, specifically LD 20 and LD 37. |

**ATTACHMENT F**

Defendants' Exhibit List

| Exh. | Description |
|------|-------------|
| A | CHP Incident Detail Report (CAD Log) No. 201213SA00205 (AGO2–AGO6) |
| B | CHP Dispatch Audio Recording (AGO7) |
| C | CHP Gold Radio Audio Recording (AGO8) |
| D | Mobile Video Audio Recording System (MVARS) for Officer Simpson (AGO9–AGO10) |
| E | December 13, 2020 surveillance videos from Bel Air Store (AGO356–AGO368) |
| F | Scene photographs taken by CHP (AGO369–AGO518) |
| G | Photographs of Bel Air Store taken by CHP (AGO519–AGO536) |
| H | Photographs of suspect's vehicle taken by CHP (AGO575–AGO582) |
| I | Photographs of knife (AGO 56 & 20-362291_507.jpg_9169909) |
| J | Sample/replica of bread knife |
| K | Toxicology Report (AGO151–AGO153) |
| L | CHP audio recording of interview Bel Air employee Brian Jackson (AGO351) |
| M | CHP audio recording of interview Bel Air employee Brittany Huggins (AGO352) |
| N | CHP audio recording of interview Bel Air employee Canrui Yu (AGO353) |
| O | CHP audio recording of interview Bel Air employee Frank Lugo (AGO354) |
| P | CHP audio recording of interview Bel Air employee Savannah Hoover (AGO355) |
| Q | Plaintiff's Government Claims Nos. 21002178 and 21002179 and related correspondence (AGO591–AGO612) |
| R | Jordan Zenka's records from Pacific Crest Trail Detox (PLTF0036–PLTF0101) |
| S | CHP Use of Force Policy v12-2020 (AGO613–AGO634) |
| T | Michael Simpson's CHP training records (AGO307–AGO340) |
| U | Greg Meyer's Curriculum Vitae/resume |
| V | Greg Meyer's expert report and supporting material |

26

| W | Transcript of Greg Meyer's deposition, taken 7/13/2023 |
|---|---|
| X | Transcript of Mary Lennox's deposition, taken 2/9/2023 |
| Y | Transcript of George Cardena's deposition, taken 5/17/2023 |
| Z | Transcript of Michael Simpson's deposition, taken 9/22/2022 |
| AA | Transcript of Roger Clark's deposition, taken 8/1/2023 |
| AB | Roger Clark's May 31, 2023 expert report |
| AC | Order from other cases excluding/limiting Roger Clark's expert testimony |
| AD | Deposition transcripts of Roger Clark from other cases |
| AE | Plaintiff's responses to defendant State of California's interrogatories, set one |
| AF | Plaintiff's responses to defendant Simpson's interrogatories, set one |
| AG | Plaintiff's responses to defendant Simpson's interrogatories, set one |
| AH | Plaintiff's responses to defendant State of California's request for production of documents, set one |
| AI | Plaintiff's responses to defendant State of California's request for production of documents, set two |
| AJ | Plaintiff's responses to defendant Simpson's request for production of documents, set one |