UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELLEN LENNOX,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO, et al.,<br><br>Defendants. | No. 2:21-cv-02075-DAD-CSK<br><br>ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER<br><br>(Doc. No. 71) |

This matter is before the court on defendants' motion for reconsideration of the order denying in part defendants' motion for partial summary judgment. (Doc. No. 71.) For the reasons set forth below, the court will deny defendants' motion for reconsideration.

**BACKGROUND**

The court will not summarize the background of this case in this order and instead incorporates by reference the background section from its August 16, 2024 order. (Doc. No. 61 at 2–14.) In short, the court granted in part and denied in part defendants' motion for summary judgment as to plaintiff's Fourth Amendment excessive use of force claim. In so ruling, the court concluded that defendant officers Simpson and Pinola were not entitled to summary judgment on qualified immunity grounds with respect to that claim. (Doc. No. 61 at 40.) Although available to them, defendants did not pursue an interlocutory appeal from the court's denial of summary judgment on qualified immunity grounds.

1

1          Instead, not until December 23, 2024 did defendants Simpson and Pinola file the pending

2  motion for reconsideration requesting that summary judgment be entered in their favor on

3  plaintiff's § 1983 claims.  (Doc. No. 71.)  Defendants move for reconsideration in light of the

4  Ninth Circuit's decision in *Hart* which the Ninth Circuit released four months prior to this court's

5  order denying defendants' motion for summary judgment and as to which the mandate issued on

6  November 8, 2024.  (*Id.* at 7); *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024).

7  Defendants contend that the decision in *Hart* provides an intervening clarification in the law as to

8  the circumstances under which law enforcement officers are entitled to qualified immunity.  On

9  January 6, 2025, plaintiff filed her opposition to the pending motion.  (Doc. No. 74.)  On January

10  16, 2025, defendants filed their reply thereto.  (Doc. No. 79.)

## LEGAL STANDARD

12          Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders of the

13  district court.  Rule 60(b) permits a district court to relieve a party from a final order or judgment

14  on grounds of:  "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

15  evidence . . .; (3) fraud . . . of an adverse party; (4) the judgment is void; (5) the judgment has

16  been satisfied . . . or (6) any other reason justifying relief from the operation of the judgment."

17  Fed. R. Civ. P. 60(b).  "A motion for reconsideration should not be granted, absent highly unusual

18  circumstances, unless the district court is presented with newly discovered evidence, committed

19  clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to

20  raise arguments or present evidence for the first time when they could reasonably have been

21  raised earlier in the litigation."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

22  F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (internal quotations marks and citations

23  omitted).

24          "Reconsideration is appropriate if the district court (1) is presented with newly discovered

25  evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is

26  an intervening change in controlling law."  *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5

27  F.3d 1255, 1263 (9th Cir. 1993).  A motion for reconsideration does not, however, give the

28  /////

1    moving party a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001)
2    (citation omitted).
3           In addition, Local Rule 230(j) requires, in relevant part, that in moving for reconsideration
4    of an order denying or granting a prior motion, a party must show "what new or different facts or
5    circumstances are claimed to exist which did not exist or were not shown" previously, "what
6    other grounds exist for the motion," and "why the facts or circumstances were not shown" at the
7    time the substance of the order which is objected to was considered. L.R. 230(j).

**DISCUSSION**

**A.    Defendants' Motion is Untimely**

10          Defendants contend that they moved for reconsideration within a reasonable time because
11   their delay in doing so was minimal and there was no prejudice to plaintiff caused thereby. (Doc.
12   No. 71 at 10–11.) Plaintiff counters that defendants' motion is untimely because the Ninth
13   Circuit decision upon which defendants rely in moving for reconsideration was decided four
14   months prior to this court issuing its order on summary judgment and defendants did not file a
15   notice of supplemental authority while their motion for summary judgment was pending before
16   this court. (Doc. No. 74 at 8–9.)
17          "A motion under Rule 60(b) must be made within a reasonable time—and . . . no more
18   than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P.
19   60(c)(1). "What constitutes 'reasonable time' depends upon the facts of each case, taking into
20   consideration the interest in finality, the reason for delay, the practical ability of the litigant to
21   learn earlier of the grounds relied upon, and prejudice to the other parties." *Ashford v. Steuart*,
22   657 F.2d 1053, 1055 (9th Cir. 1981). "What is . . . a reasonable time is a fact-intensive
23   determination in every case." *Mut. Life Ins. Co. of N.Y. v. Pointe Tapatio Resort Props. No. 1*
24   *Ltd. P'ship*, 206 F.R.D. 495, 497 (D. Ariz. 2002).
25          Here, defendants had almost four months, from April 19, 2024 until August 16, 2024, to
26   inform this court of the Ninth Circuit's decision in *Hart* before the summary judgment order was
27   issued. (Doc. No. 71 at 10.) If they wished the court to consider *Hart,* defendants could have
28   and should have so informed the court through the filing of a notice of supplemental authority as

3

1    authorized by the Local Rules of this court. *See* L.R. 230(m)(2) (A notice of supplemental

2    authority may be used "to bring the [c]ourt's attention to a relevant judicial opinion issued after

3    the date that party's opposition or reply was filed.") "Although [defendants] could have known

4    about this decision prior to the [c]ourt's issuance of the [summary judgment order, defendants]

5    did not file a notice of supplemental authority." *Huckaby v. CRST Expedited, Inc.*, No. 2:21-cv-

6    07766-ODW-PD, 2023 WL 2869276, at *2 (C.D. Cal. Apr. 10, 2023) (holding that the

7    defendant's motion for reconsideration was untimely because it relied on a Ninth Circuit decision

8    that had issued three months prior to the issuance of the order that was the subject of the motion

9    for reconsideration).

10         The only explanation proffered by defendants for their delay is that the Ninth Circuit's

11   decision in *Hart* was not final. (Doc. No. 71 at 10.) In this regard, the mandate did not issue in

12   *Hart* until November 8, 2024 because the appellees had filed a petition for rehearing *en banc*.

13   (*Id.*) As plaintiff correctly notes, however, the Local Rules do not require that notices of

14   supplemental authority only refer to cases in which the mandate has issued. (Doc. No. 74 at 9);

15   L.R. 230(m)(2).

16         The district court in *Huckaby* was presented with a situation similar to the one posed here

17   when the Ninth Circuit issued an arguably relevant decision three months prior to the district

18   court's ruling. *Huckaby*, 2023 WL 2869276, at *2. Fifteen days after the district court issued its

19   order, the defendant filed a notice of reconsideration in light of the Ninth Circuit's decision. *Id.*

20   No mandate had yet issued in the Ninth Circuit's case because the plaintiff-appellees had filed a

21   petition for rehearing and rehearing *en banc*. Nonetheless, the district court in *Huckaby* found

22   that it was unreasonable for defendant to have delayed seeking relief because the defendant could

23   have made the court aware of the Ninth Circuit's decision through the filing of a notice of

24   supplemental authority or by promptly moving for reconsideration. *Id.*

25         Notably, in the present case defendants did not alert the court to the decision in *Hart*

26   immediately after the court's issuance of its order on summary judgment. Instead, defendants

27   proceeded to file a joint notice of trial readiness and made no mention of the decision in *Hart*

28   until the filing of the joint pretrial statement on December 3, 2024. (*See* Doc. Nos. 64, 65 at 8.)

1    Defendants still further delayed in filing their motion for reconsideration until December 23,
2    2024, 45 days after the issuance of the mandate in *Hart* and after this court issued its tentative
3    pretrial order.  (Doc. Nos. 69, 70, 71); *see Ashford*, 657 F.2d at 1055 ("Nothing impeded
4    [defendants'] awareness of the court's ruling and of all the relevant facts and law[]"); *cf. Love v.*
5    *Lewis*, No. 12-cv-10596-DDP, 2021 WL 4456959, at *5 (C.D. Cal. Aug. 2, 2021) (finding that
6    the *pro se* prisoner petitioner had timely filed his motion for reconsideration despite a six month
7    delay from the issuance of the Ninth Circuit's mandate in light of his *pro se* status, his
8    incarceration, and the COVID-19 pandemic).  Under the circumstances of this case, the court
9    concludes that defendants' motion for reconsideration is untimely.  *See McKinney v. Hubbard*,
10   No. 1:09-cv-02096-BAM (PC), 2016 WL 7383969, at *2 (E.D. Cal. Dec. 20, 2016) ("Taking into
11   consideration the interest in finality, the lack of reasons for [defendants'] extended delay, and the
12   practical ability of [defendants] to contact the [c]ourt earlier, the [c]ourt finds [defendants'] delay
13   in moving for reconsideration . . . unreasonable.")
14           Accordingly, defendants' pending motion for reconsideration will be denied as untimely.
15   *See McPhatter v. Ryan*, No. 11-cv-08147-PCT-RCB-JFM, 2013 WL 428280, at *6 (D. Ariz. Feb.
16   4, 2013) (denying a motion for reconsideration because it was not made within a reasonable
17   time).  Nonetheless, below the court will also address defendants' motion on its merits.
18   **B.      Intervening Change in the Law**
19           Defendants contend that under the Ninth Circuit's decision in *Hart* defendant officers
20   Pinola and Simpson are entitled to summary judgment in their favor on qualified immunity
21   grounds.  (Doc. No. 71 at 14–17.)  Plaintiff counters, arguing that the decision in *Hart* has no
22   impact on this court's analysis in denying defendants' motion for summary judgment on qualified
23   immunity grounds because "details that were critical to that opinion are wholly different from key
24   details in this case."  (Doc. No. 74 at 12.)
25           In *Hart*, the decedent had intentionally cut his throat and arms at his family home and his
26   family had called 911 for assistance.  *Hart*, 99 F.4th at 545.  Two officers, Gomez and Velez,
27   arrived at the decedent's home where one of the family member plaintiffs met them in the front
28   yard, asked for their help, and pointed to where the decedent was located in the backyard.  *Id.*

5

The two officers entered the backyard, with Officer Gomez instructing Officer Velez to use less lethal force with her taser while he would use lethal force.[1]  *Id.* at 546.  As the officers entered the backyard, the decedent was holding a knife.  *Id.*  It was disputed whether the decedent was facing the officers and whether he was holding a knife at his side or out at shoulder height.  *Id.*  Officer Gomez twice instructed the decedent to drop the knife he was holding, but decedent instead started moving towards the officers.  *Id.*  The decedent then rapidly moved to just within a few feet from the officers in less than 5.9 seconds.  *Id.*  The officers did not warn the decedent they were about to fire their weapons, but Officer Velez fired her taser.  *Id.*  The taser proved ineffective at preventing the decedent from approaching.  *Id.*  Officer Gomez fired his firearm and struck the decedent multiple times in the torso.  *Id.*

The Ninth Circuit held that under the undisputed facts on summary judgment Officer Gomez was entitled to qualified immunity as to the plaintiffs' § 1983 claims.  *Id.* at 555.  The court distinguished the facts before it from those confronted in several prior police shooting cases in which the Ninth Circuit had concluded the defendant officers were not entitled to qualified immunity.  *Id.*  First, the court in *Hart* distinguished the decision in *Deorle v. Rutherford*, 272 F.3d 1272, 1275–76 (9th Cir. 2001), noting that, in that case, the officers had had "thirty to forty minutes" to plan their course of action in handling a man who was unarmed and had generally obeyed instructions given to him by various officers.  *Id.* at 555–56.  In *Hart*, by contrast, the court observed that the defendant officers were "responding quickly to an emergency suicide situation" and the decedent "was armed with a knife, failed to drop the knife when commanded, and approached the officers while brandishing the knife.  *Id.* at 556.  Similarly, the court in *Hart* distinguished the decision in *Vos v. City of Newport Beach*, 892 F.3d 1024, 1029–30, 1033–34 (9th Cir. 2018), by noting that in that case an officer had a 40-millimeter less-lethal projectile launcher and twenty minutes to plan their actions, unlike the emergency situation the officers in *Hart* were presented with where they had limited equipment and had to respond quickly.  *Id.* at

---

[1] Neither Officer Gomez or Officer Velez had a 40-millimeter launcher, a less-lethal weapon than those they possessed, but were expecting a third backup officer to arrive who possessed one.  *Id.* at 545, n.1.  Nonetheless, they proceeded without this third officer and came upon the decedent in his backyard.  *Id.* at 546.

6

1  556.  Finally, the court in *Hart* noted that *S.R. Nehad v. Browder*, 929 F.3d 1125, 1130–31 (9th
2  Cir. 2019) was decided after the events that were the subject of *Hart* and therefore "could not
3  have informed Gomez that his conduct was unlawful." *Id.*  Nonetheless, the court distinguished
4  *Browder* by noting that the decedent in that case was not engaged in an active suicide attempt,
5  had not harmed himself or others, and was not rapidly approaching the officers, unlike the
6  decedent in *Hart*.  *Id.* at 556–57.
7      Defendants argue that the court's reasoning in *Hart* distinguishing the undisputed facts
8  before it from the decisions in *Vos* and *Deorle* applies here because, as in *Hart*, Mr. Zenka was
9  approaching the two officers with a knife in his hand when he was shot by those officers.  (Doc.
10  No. 71 at 17.)  But, as plaintiff persuasively argues, the grounds upon which the court in *Hart*
11  distinguished the holdings in *Vos* and *Deorle* are largely inapplicable under the undisputed facts
12  in this case. (Doc. No. 74 at 16–17.)  Unlike in *Hart*, there were 22 officers on the scene inside
13  the grocery store at the time Mr. Zenka was confronted, rather than only two officers standing in a
14  small backyard as was the case in *Hart*.  (Doc. No. 61 at 7.)  In addition, here a reasonable jury
15  could find from the evidence that those 22 officers had twenty minutes to deliberate upon their
16  tactical plans in approaching Mr. Zenka rather than being forced to make an emergency decision
17  within a few seconds.  (*Id.* at 43.)  The officers in this case, unlike those in *Hart*, also had access
18  to other less-lethal weapons, such as 40-millimeter launchers.  (*Id.* at 11.)  The decedent in *Hart*
19  came at the officers immediately after they encountered him, whereas decedent Zenka stood in
20  the produce section of the store while officers surrounded him and only moved toward officers
21  who stood in front of the exit door once the other officers began firing their less lethal weapons at
22  him, a movement that was anticipated by the officers themselves. (*Id.* at 6, 11.)  Further, in *Hart*
23  even the plaintiffs' own expert opined that the decedent posed an imminent threat to the officers
24  (*Hart*, 99 F.4th at 551–52), a circumstance certainly not present here.  (See Doc. No. 61 at 25–26)
25  ("A reasonable jury could find from the evidence that decedent Zenka, shuffling toward
26  defendants Pinola and Simpson and ten to fifteen feet away when shot, was not within striking
27  distance of those officers.")  In sum, any similarities between the facts before the court in *Hart*
28  and those in this case on summary judgment are superficial at best – limited essentially to both

7

1    cases involving police confronting someone who had harmed themselves with a knife which they
2    continued to possess. Accordingly, the Ninth Circuit's decision in Hart provides no basis upon
3    which this court should reconsider its order on summary judgment.
4        The court also notes that, since the untimely filing of the pending motion for
5    reconsideration, the Ninth Circuit has issued its decision in *Singh v. City of Phoenix*, 124 F.4th
6    746 (9th Cir. 2024). Consideration of that decision further supports this court's denial of the
7    defendants' motion for summary judgment on qualified immunity grounds. In *Singh*, one of the
8    defendant officers and another officer responded to a call of an attempted armed robbery of a
9    Home Depot, where they encountered the plaintiff walking through a Carl's Jr. parking lot.
10   *Singh*, 124 F.4th at 748. The officers used their two patrol cars to pull up on both sides of the
11   plaintiff, who was holding a knife against his own throat. *Id.* The defendant officer pointed her
12   gun at the plaintiff and instructed him multiple times over the course of a few minutes to drop the
13   knife. *Id.* When the plaintiff failed to comply and moved slowly towards the defendant officer,
14   despite the fact that the defendant officer possessed the less-lethal options of deploying a taser
15   and pepper spray, the defendant officer shot the plaintiff. *Id.* The Ninth Circuit concluded on
16   these facts that the defendant officer was not entitled to summary judgment on qualified
17   immunity grounds. *Id.* at 748, 750–755.
18       In so holding, the Ninth Circuit court relied on factual similarities between the case before
19   it and those confronted in in *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011). *Id.* at
20   750–755.[2] For instance, the court in *Singh* noted that in both the case before it and in *Glenn*, the
21   plaintiff did not brandish a knife at anyone, did not threaten anyone with the knife, had not
22   injured anyone but themselves, and that there was a genuine dispute of fact as to whether a less
23   lethal alternative means of force was available to the officer. *Id.* Notably, the Ninth Circuit in
24   *Singh* found the case before it to be "readily distinguishable" from that posed in *Hart*, noting that
25   "Hart's own expert testified that Hart posed an imminent threat to the officers" by moving
26   quickly towards the officers with a knife held out towards them. *Id.* at 755. As in *Singh*, here Mr.

---

[2] Several of those similarities exist between the facts at issue in *Glenn* and those in the present case.

Zenka had not threatened the defendant officers, a reasonable jury could find that he was running toward the store exit (as officers anticipated he might when struck with less lethal force) and had his movement restricted by other surrounding officers. *Id.* Therefore, the court concludes that the Ninth Circuit's decision in *Singh* provides further support for its prior order denying the motion of defendants Simpson and Pinola for summary judgment on qualified immunity grounds.

Accordingly, having considered the Ninth Circuit's decision in *Hart,* the court will deny defendants' motion for reconsideration.

## CONCLUSION

For the reasons set forth above, defendant Simpson and Pinola's motion for reconsideration of the court's August 16, 2024 order (Doc. No. 71) is denied.

IT IS SO ORDERED.

Dated: **January 22, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE