1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  NORMAN D. MORRISON, State Bar No. 212090
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL, State Bar No. 202954
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 210-7320
6    Facsimile:  (916) 322-8288
     E-mail:  Diana.Esquivel@doj.ca.gov
7  *Attorneys for Defendants State of California, by and
   through the California Highway Patrol, and Michael*
8  *Simpson*

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11                    SACRAMENTO DIVISION

12

13  **MARY ELLEN LENNOX,**                 No. 2:21-cv-02075 DAD-CSK

14                          Plaintiff,     **STATE DEFENDANTS' MOTION IN**
                                           **LIMINE NO. 3 TO EXCLUDE OR**
15         v.                              **REDACT PHOTOGRAPHS OF**
                                           **DECEDENT'S BODY; SUPPORTING**
16                                         **DECLARATION**

17  **CITY OF SACRAMENTO, et al.,**         Trial:       February 18, 2025
                                           Time:        9:00 a.m.
18                          Defendants.    Courtroom:   4 (15th Floor)
                                           Judge:       Hon. Dale A. Drozd
19                                         Action Filed: August 26, 2021

20

21                         **INTRODUCTION**

22         Defendants State of California, by and through the California Highway Patrol, and Michael

23  Simpson (State Defendants) move, under Federal Rule of Evidence 401, 402, and 403, to exclude

24  photographs depicting decedent Jordan Zenka's lifeless body and which are gruesome and

25  bloody. The Court should exclude the photographs because they lack probative value, are highly

26  inflammatory, and are substantially more prejudicial than probative. In the alternative, State

27  Defendants request that the photographs be redacted to cover Zenka's body from the jury's view.

28

1

**ARGUMENT**

Federal Rule of Evidence 402 provides that all relevant evidence is admissible and evidence that is not relevant is inadmissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Relevant evidence may be excluded if it will cause prejudice, undue delay, a waste of time, or a needless presentation of cumulative evidence in the discretion of the court. Fed. R. Evid. 403; *Obrey v. Johnson*, 440 F.3d 691, 698 (9th Cir. 2005).

> A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 [].

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). The court must look to the "relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401, 1972 Adv. Comm. Note. Indeed, the court should ask the appropriate question: "Does the item of evidence tend to prove the matter sought to be proved?" *Id.*

## I.  THE PHOTOGRAPHS ARE NOT RELEVANT TO LIABILITY OR DAMAGES

The central liability issue in this case is whether the Defendant officers used excessive force during their encounter with Zenka on December 13, 2020. Graphic photographs of Zenka's bloody, lifeless body following the subject incident have no relevance to the issues of liability or damages. Plaintiff did not designate a ballistics expert that will rely on diagrams and photographs of the scene. (Pl.'s Expert Disclosures, attached as Ex. A to Esquivel Decl.) Plaintiff also did not designate a retained medical expert to opine on the nature, extent, and cause of Zenka's injuries. (*Id*.) Although Plaintiff listed Dr. Keng-Chih Su, the forensic pathologist who performed Zenka's autopsy, as a non-retained expert, Dr. Su's autopsy report does not list any photograph taken at the scene as material he relied upon to perform his duties and reach his conclusions. (Autopsy Report, attached as Ex. B to Esquivel Decl.) Thus, Dr. Su cannot rely on the photographs should he testify at trial, nor can Plaintiff elicit any opinion from him based on the photographs. *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (holding that a

1    treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent

2    that his opinions were formed during the course of treatment, and for opinions formed on the

3    basis of information obtained by the physician other than in the course of the treatment, the same

4    rule applies as for any other expert and a report is required setting forth the expert's opinions and

5    the basis for those opinions).

6        The photographs are also irrelevant to Plaintiff's damages claim. Plaintiff was not present

7    during the subject incident, and she has no personal knowledge of what transpired between Zenka

8    and the officers. (Lennox Dep. 43:20-44:4, attached as Ex. C to Esquivel Decl.) As mentioned

9    above, Plaintiff did not designate a medical expert to opine as to Zenka's injuries and any pain

10    and suffering he may have experienced. (Ex. A.) Thus, the photographs are inadmissible to any

11    damages claim.

12
13    **II.    GRAPHIC PHOTOGRAPHS DEPICTING ZENKA'S BLOODY BODY FOLLOWING THE SUBJECT
       INCIDENT ARE SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE**

14        Federal Rule of Evidence 403 requires the exclusion of the photographs when their

15    "probative value is substantially outweighed by a danger of one or more of the following: unfair

16    prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

17    presenting cumulative evidence." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997). The 1972

18    Advisory Committee Note to Rule 403 explains that "unfair prejudice" within the context of Rule

19    403 "means an undue tendency to suggest a decision on an improper basis, commonly, though not

20    necessarily, an emotional one." Indeed, under some circumstances, the admission of evidence that

21    is so inflammatory and irrelevant can constitute reversible error. *Scott v. U.S.*, 263 F.2d 398, 401-

22    02 (5th Cir. 1959) (finding that testimony of alleged conversation "was so inflammatory and so

23    prejudicial that no amount of cautionary instruction could eradicate the impression of this

24    testimony from the jurors' minds").

25        Photographs, in particular, can be unfairly prejudicial if they are "sufficiently shocking or

26    repulsive" enough to necessarily elicit an emotional response from the jury. *U.S. v. Brady*, 579

27    F.2d 1121, 1129 (9th Cir. 1978); *Rivers v. United States*, 270 F.2d 435, 437 (9th Cir. 1959) ("A

28    good statement of the rule commonly accepted is ... as follows: 'Such photographs should be

1   excluded where their principal effect would be to inflame the jurors against the defendant because

2   of the horror of the crime; on the other hand, if they have a probative value with respect to a fact

3   in issue that outweighs the danger of prejudice to the defendant, they are admissible, and the

4   resolution of this question is primarily for the trial court in the exercise of its discretion.'")

5   (citations omitted). The Tenth Circuit in *Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003)

6   cautioned:

> Although there are no clearly defined legal elements, the fundamental-fairness
> inquiry requires us to look at the effect of the admission of the photographs within the
> context of the entire second stage .... We consider the relevance of the photographs
> and the strength of the aggravating evidence against Spears and Powell as compared
> to the mitigating evidence in their favor and decide whether admission of the
> photographs could have given the State an unfair advantage. Ultimately, we consider
> whether the jury could judge the evidence fairly in light of the admission of the
> photographs.

12      Other circuits are also in agreement that gruesome photographs with minimal probative

13   value should be excluded under Rule 403. *U.S. v. Katz*, 178 F.3d 368, 374 (5th Cir. 1999)

14   (upholding district court's exclusion of a GIFs portraying minor pornography even where the

15   offering party sought to use the GIFs to prove the minor's age); *U.S. v. Hands*, 184 F.3d 1322,

16   1329 (11th Cir. 1999) (reversing lower court's admittance of bloody photographs of spouse on

17   Rule 403 grounds, stating that the "evidence in this case was particularly likely to incite the jury

18   to an irrational decision because it was graphic and arresting."); *Navarro de Cosme v. Hospital

19   Pavia*, 922 F.2d 926, 930-931 (1st Cir. 1991) (finding that stillborn photographs, aimed at

20   proving the cause of death of the fetus, were properly excluded where the "district court was of

21   the opinion that the photographs would have a serious impact on the jury, and would unfairly

22   prejudice the [defendants]").

23      Here, unlike other cases where courts have found gruesome photographs admissible to

24   prove the merits or an essential element of charge or claim, the probative value of the

25   photographs depicting Zenka's bloody body is vastly outweighed by their prejudicial effect. Cf.

26   *U.S. v. Mitchell*, 502 F.3d 931, 968 (9th Cir. 2007) (finding that photographs were relevant to

27   show motive, premeditation, and consciousness of guilt, as it tended to show that defendant

28   needed to, and tried to, obscure the identity of his victims); *U.S. v. Brown*, 441 F.3d 1330, 1362-

4

63 (11th Cir. 2006) (finding that during guilt phase of criminal trial photographs were probative of fact of death, number and nature of stab wounds, and presence of aggravating factor of heinous/cruel manner of offense).

Plaintiff and her counsel have expressed their intent to introduce into evidence or show the jury numerous photographs of, or that depict, Zenka's lifeless, bloody body. (Photos Nos. 1-3, attached as Ex. D to Esquivel Decl.) Defendants contend that the sole reason Plaintiff and her counsel would seek to introduce into evidence such photographs would be to inflame the passions of the jury. As discussed above, such photographs are of minimal, if any, probative value as they are not relevant to the merits of Plaintiff's claims or damages. While photographs of the location of physical evidence may give context to the testimony of experts and percipient witnesses, the use of bloody or gruesome photographs do not give any such context and will detract from the purpose for which the photograph was intended. Moreover, many other photographs were produced in discovery that show the location of certain evidence or layout of the area that can aid in giving context to a witness' testimony but which do not depict Zenka's bloody body. (*See, e.g.*, Photos Nos. 4-5, Ex. D.) To the extent Plaintiff desires to use a photograph for which an alternative (without Zenka's body) is not available, Plaintiff should redact his body from the photograph to eliminate the photograph's inflammatory and prejudicial effect.

## CONCLUSION

Photographs of Zenka's bloody, lifeless body have minimal probative value that is substantially outweighed by their prejudicial effect and should be excluded. If the Court is inclined to allow such photographs, the number of photographs should be limited, duplicative photographs should be excluded, and the photograph should be displayed to the jury only when and for how long is necessary to limit the risk of inflaming the passions of the jury.

1    Dated:  January 28, 2025                          Respectfully submitted,

2                                         ROB BONTA
                                        Attorney General of California
3                                         NORMAN D. MORRISON
                                        Supervising Deputy Attorney General
4

5                                         */s/ Diana Esquivel*

6                                         DIANA ESQUIVEL
                                        Deputy Attorney General
7                                         *Attorneys for Defendants State of Cal. and*
                                        *Simpson*
8

   SA2021305171
9    38743837.docx

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' MIL No.3 re Exclude/Redact Photos of Decedent's Body
(2:21-cv-02075-DAD-CSK)

**DECLARATION OF DIANA ESQUIVEL**

I, Diana Esquivel, declare:

1. I am admitted to practice law in California and before this Court, and am a Deputy Attorney General with the Office of the Attorney General for the State of California, attorneys of record for Defendants State of California, by and through the California Highway Patrol (CHP), and Michael Simpson (State Defendants).

2. As required in the Court's Standing Order, the parties meet and conferred on the issues presented in this motion as well as the other issues the parties identified as matters that would be subject to motions in limine. On January 24, 2025, I sent all counsel a detailed e-mail, listing the factual and legal basis for the motions the State Defendants intended to file. The same day, Plaintiff's counsel provided the basis for their intended motions. I immediately responded to Plaintiff's e-mail with the State Defendants' tentative position on those issues. Over the course of the following days, the parties exchanged additional e-mails concerning their position on certain issues. On January 28, 2025, counsel had a conference call and reached agreement on several issues that are the subject of a stipulation that is being filed with the Court under separate cover. The parties were unable to agree on other issues, including the subject matter addressed in this motion in limine.

3. Exhibit A is a true and correct copy of Plaintiff's Initial Expert Disclosure Pursuant to FRCP 26 served in this case.

4. Exhibit B is a true and correct copy, with selected redactions, of the Sacramento County Coroner's Autopsy Report, prepared by forensic pathologist Dr. Keng-Chih Su.

5. Exhibit C are excerpts of the relevant portions of the transcript of Plaintiff Mary Lennox's deposition testimony, taken on February 9, 2023, in this matter.

6. Exhibit D contains true and correct copies, with selected redactions, of the following photographs produced in discovery:

> • Page 1: 20-362291_321.JPG_9169351
>
> • Page 2: 20-362291_322.JPG_9169354
>
> • Page 3: 20-362291_323.JPG_9169357

1    • Page 4:  20-362291_324.JPG_9169357

2    • Page 5:  20-362291_326.JPG_9169357

3    Plaintiff identified the photographs in pages 1 to 3 of Exhibit A, without redaction, as ones she

4    intends to introduce into evidence at trial. (Final Pretrial Order 24:18-20, ECF No. 78.)

5        7.  I redacted the autopsy report in Exhibit B and the first three photographs of Exhibit D to

6    comply with the Protective Order (ECF No. 27) that is in place in this case, and will provide the

7    Court and counsel with unredacted copies by e-mail.

8        I declare under penalty of perjury under the laws of the United States and the State of

9    California that the foregoing statements are true and correct.

10

11    Dated:  January 28, 2025                    ____*/s/ Diana Esquivel*____
12                                                           Diana Esquivel

# Exhibit A

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galipolaw.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

MARY ELLEN LENNOX,

        Plaintiff,

     vs.

CITY OF SACRAMENTO, et al.,

       Defendants.

Case No. 2:21-cv-02025-DAD-KJN

[*Hon. Dale A. Drozd*]

**PLAINTIFF'S INITIAL EXPERT DISCLOSURE PURSUANT TO FRCP 26**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff MARY ELLEN LENNOX hereby designates the following retained and non-retained expert witnesses who may be called upon to give expert testimony at trial pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. Plaintiff reserves her right to amend and/or supplement this disclosure.

## I. RETAINED EXPERT

**A. Roger A. Clark**
Police Procedures Consultant, Inc.
10207 Molino Road
Santee, CA 92071
Tel: (208) 351-2458

Mr. Clark's Rule 26 report, curriculum *vitae*, fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit "A."

## II. NON-RETAINED EXPERTS

**A. Chad Kolpacoff**
Sacramento Fire Department
5770 Freeport Blvd., Suite 200
Sacramento, CA 95822
Tel: (916) 808-1300

Mr. Kolpacoff is a Paramedic with the Sacramento Fire Department and treated Jordan Zenka at the scene on the date of the subject incident and pronounced Mr. Zenka deceased. Mr. Kolpacoff is expected to testify as to: the nature of the injuries Mr. Zenka sustained during the incident; the medical treatment provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and any related medical or ambulance bills; Mr. Zenka's condition and injuries observed; and any other observations he may have formed regarding the incident.

/ / /

/ / /

/ / /

/ / /

**B. Matt Barnick**
Sacramento Fire Department
5770 Freeport Blvd., Suite 200
Sacramento, CA 95822
Tel: (916) 808-1300

Mr. Barnick is a Paramedic with the Sacramento Fire Department and treated Decedent Jordan Zenka at the scene on the date of the subject incident before Mr. Zenka was pronounced deceased. Mr. Barnick is expected to testify as to: the nature of the injuries Mr. Zenka sustained during the incident; the medical treatment provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and any related medical or ambulance bills; Mr. Zenka's condition and injuries observed; and any other observations he may have formed regarding the incident.

**C. J. Ward**
Sacramento Fire Department
5770 Freeport Blvd., Suite 200
Sacramento, CA 95822
Tel: (916) 808-1300

J. Ward is a Paramedic with the Sacramento Fire Department and treated Decedent Jordan Zenka at the scene on the date of the subject incident before Mr. Zenka was pronounced deceased. J. Ward is expected to testify as to: the nature of the injuries Mr. Zenka sustained during the incident; the medical treatment provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and any related medical or ambulance bills; Mr. Zenka's condition and injuries observed; and any other observations he/she may have formed regarding the incident.

**D. Dave Charron**
Sacramento Fire Department
5770 Freeport Blvd., Suite 200
Sacramento, CA 95822
Tel: (916) 808-1300

Mr. Charron is a Captain with the Sacramento Fire Department and treated Decedent Jordan Zenka at the scene on the date of the subject incident before Mr. Zenka was pronounced deceased. Mr. Charron is expected to testify as to: the nature of the injuries Mr. Zenka sustained during the incident; the medical treatment provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and

PLAINTIFF'S INITIAL EXPERT DISCLOSURE PURSUANT TO FRCP 26

1   any related medical or ambulance bills; Mr. Zenka's condition and injuries observed;

2   and any other observations he may have formed regarding the incident.

3   **E. Greg Murdock**
    Sacramento Fire Department
4   5770 Freeport Blvd., Suite 200
    Sacramento, CA 95822
5   Tel: (916) 808-1300

6   Mr. Murdock is a Captain with the Sacramento Fire Department and treated

7   Decedent Jordan Zenka at the scene on the date of the subject incident before Mr.

8   Zenka was pronounced deceased. Mr. Murdock is expected to testify as to: the nature

9   of the injuries Mr. Zenka sustained during the incident; the medical treatment

10  provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and

11  any related medical or ambulance bills; Mr. Zenka's condition and injuries observed;

12  and any other observations he may have formed regarding the incident.

13  **F. Brhett Steppig**
    Sacramento Fire Department
14  5770 Freeport Blvd., Suite 200
    Sacramento, CA 95822
15  Tel: (916) 808-1300

16  Mr. Steppig is a Battalion Chief with the Sacramento Fire Department and

17  treated Decedent Jordan Zenka at the scene on the date of the subject incident before

18  Mr. Zenka was pronounced deceased. Mr. Steppig is expected to testify as to: the

19  nature of the injuries Mr. Zenka sustained during the incident; the medical treatment

20  provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and

21  any related medical or ambulance bills; Mr. Zenka's condition and injuries observed;

22  and any other observations he may have formed regarding the incident.

23  **G. Martin Gennuso**
    Sacramento Fire Department
24  5770 Freeport Blvd., Suite 200
    Sacramento, CA 95822
25  Tel: (916) 808-1300

26  Mr. Gennuso is an Engineer with the Sacramento Fire Department and treated

27  Decedent Jordan Zenka at the scene on the date of the subject incident before Mr.

28  Zenka was pronounced deceased. Mr. Gennuso is expected to testify as to: the nature

1  of the injuries Mr. Zenka sustained during the incident; the medical treatment
2  provided to Mr. Zenka at the scene; the reasonableness and necessity of treatment and
3  any related medical or ambulance bills; Mr. Zenka's condition and injuries observed;
4  and any other observations he may have formed regarding the incident.

5  **H. K. Fischer**
6  Sacramento Fire Department
   5770 Freeport Blvd., Suite 200
7  Sacramento, CA 95822
   Tel: (916) 808-1300

8  K. Fischer is an Engineer with the Sacramento Fire Department and treated
9  Decedent Jordan Zenka at the scene on the date of the subject incident before Mr.
10 Zenka was pronounced deceased. K. Fischer is expected to testify as to: the nature of
11 the injuries Mr. Zenka sustained during the incident; the medical treatment provided
12 to Mr. Zenka at the scene; the reasonableness and necessity of treatment and any
13 related medical or ambulance bills; Mr. Zenka's condition and injuries observed; and
14 any other observations he/she may have formed regarding the incident.

15
16 **I.  Keng-Chih Su, M.D.**
   4800 Broadway #100
17 Sacramento, CA 95820
   Tel: (916) 874-9320

18 Ken-Chih Su, M.D. is the forensic pathologist who performed the autopsy of
19 Mr. Zenka and is expected to testify as to: the nature of the injuries Mr. Zenka
20 sustained during the subject incident; and medical treatment or life saving measures
21 provided to Mr. Zenka after the shooting; the reasonableness and necessity the pain
22 and suffering experienced by Mr. Zenka prior to his death; and the cause and manner
23 of Mr. Zenka's death.

24
25 DATED: May 31, 2023          LAW OFFICES OF DALE K. GALIPO
26
27                       By:
28                            Dale K. Galipo
                             Attorneys for Plaintiffs

                             -4-

# Exhibit B



## SACRAMENTO COUNTY
## CORONER

| CLASSIFICATION | 1 Final Classification: Homicide | 2 Case No. 20-07289 | 3 Deputy Assigned: Marcus Kelln | 4a Date of Death 12/13/2020 | 4b Found? |
|---|---|---|---|---|---|
| DECEDENT PERSONAL DATA | 5 Name First: JORDAN | 6 Name Middle: AVERY | 7 Name Last: ZENKA | 8a Time of Death 07:13 | 8b Fnd/Est/Unk: |
| | 9 Sex Male | 10 Race Mexican | 11 Date of Birth | 12 Age 26 Years | 13 Marital Status Never Married |

| RESIDENCE | 14 Usual Address 4401 NATOMAS CENTRAL DRIVE | | | | |
|---|---|---|---|---|---|
| | 15 City Sacramento | | 16 County Sacramento | 16a State CA | 17 Zip Code 95834 |

| IDENTIFICATION | 18 Remains Identified by or how Identified GRIFFIN, Lori      Fingerprints |
|---|---|

| RELATIVES | LENNOX, MARY      Mother |
|---|---|

| PLACE OF DEATH | 21 Place of Death Business | | | | |
|---|---|---|---|---|---|
| | 22 Street Address 3250 ARENA BLVD | | | | |
| | 23 City Sacramento | | 24 County Sacramento | | 25 Zip 95834 |

| REMAINS | 26 Death Reported By CANNEDY, DERICK | 27 Removed To Coroner Yes | 28 Type of Medical Examination Homicide |
|---|---|---|---|

| CAUSE OF DEATH | 29 Cause   Multiple gunshot wounds<br>due to:<br>due to:<br>due to: |
|---|---|

| OTHER SIGNIFICANT CONDITIONS | 30 |
|---|---|

| INJURY INFORMATION | 31 Manner of Death Homicide | 32 Place of Injury Business | 33 At Work? No | 34a Date of Injury 12/13/2020 | 34b Fnd/Est/Unk |
|---|---|---|---|---|---|
| | 35 Address or Location 3250 ARENA BLVD | | | 36a Time of Injury 06:43 | 36b Fnd/Est/Unk |
| | 37 City Sacramento | 38 County Sacramento | | | 39 Zip Code 95834 |
| | 40 Describe how Injury occurred | DECEDENT WAS SHOT BY LAW ENFORCEMENT OFFICERS | | | |

| CASE SUMMARY | See Page 2 |
|---|---|

Deputy  _X O l_  Marcus Kelln     Date Signed  5/4/2021

**Ex. B-1**
AGO138



SACRAMENTO COUNTY

CORONER

**Final Case Summary**

As required by Government Code, Section 27491, an inquiry was made into the death of the subject of this report. It was determined by an investigation that an autopsy would be necessary to establish the cause of death. An autopsy was performed and revealed the above cause of death. Based on the known circumstances and cause of death, the manner of death is Homicide.

**Ex. B-2**

AGO139



# County of Sacramento

Department of Coroner
4800 Broadway, Suite 100
Sacramento, CA 95820-1530

**Kimberly D. Gin**
**Coroner**

---

| ☒ Autopsy | | ☐ External Examination |
|---|---|---|
| **NAME:** ZENKA, JORDAN A. | | **CASE NO.** 20-07289 |
| **POSTMORTEM DATE:** | 12/17/20 | **TIME:** 09:45 |
| **INVESTIGATOR:** | Marcus Kelln | |

---

## AUTOPSY FINDINGS:

 I.   Gunshot wound of right shoulder:



II.   Gunshot wound of chest:



III.   Gunshot wound of back, a ricochet or had passed through an intermediary target:





**County of Sacramento**
Department of Coroner
4800 Broadway, Suite 100
Sacramento, CA 95820-1530



IV.    Gunshot wound of back:

V.    Gunshot wound of abdomen:



VI.    Gunshot wound of back:



VII.    Gunshot wound of left forearm:





**County of Sacramento**

Department of Coroner
4800 Broadway, Suite 100
Sacramento, CA 95820-1530

**Kimberly D. Gin**
**Coroner**

VIII. Electroshock weapon associated injuries (x 3):

IX. Sharp force injuries of neck:

X. Blunt force injuries:

XI.

XII.

**CAUSE OF DEATH: Multiple gunshot wounds**

**OPINION:**

Keng-Chih Su, M.D.
Forensic Pathologist / Neuropathologist
March 17, 2021

**WITNESSES:**
None.

**IDENTIFICATION:**



**EVIDENCE OF MEDICAL INTERVENTION:**
The following are present, and are in proper position: EKG pads at the chest and the abdomen; oral airway in mouth; and adhesive patches at the right breast and the right back. ▉▉▉▉▉▉
▉▉▉▉▉▉▉▉

**CLOTHING:**
1. Black tank top, cut-open. There are tears at the right axillary (x 1) and the right back areas (multiple).
2. Gray boxer brief.
3. Black pants.
4. Pair of black socks.
5. Hands are restrained by metal handcuffs at the back.

**EVIDENCE OF EXTERNAL TRAUMATIC INJURY AND ASSOCIATED INTERNAL TRAUMATIC INJURY:**
Gunshot wounds are numbered for purposes of the autopsy and do not represent a chronological order in which wounds are received. All wound measurements are taken with the body in anatomic position unless otherwise stated.

Gunshot wound #I of the right shoulder:

Gunshot wound #II of the chest:

████████████████████████████████████
████████████████████████████████████████

████████████████████████

█
█████████████████████████████
████████████████████

Gunshot wound #III of the back, a ricochet or had passed through an intermediary target:

████████████████████████████████████████

███████

████████████████████████████

████████████████████████████████████

████████████████

██████

Gunshot wound #IV of the back:

███████████ ██ ███████████████

███████

████████████████████████████████

████████████████████████████████████

██████████████████

█
██████████████████.

Gunshot wound #V of the abdomen:

████████████████████████████████████



Gunshot wound #VI of the back:

Gunshot wound #VII of the left forearm:

ZENKA, JORDAN A.                              20-07289

Electroshock weapon associated injuries (x 3):

Sharp force injuries of neck:

Blunt force injuries:

**EXTERNAL EXAMINATION**

**INTERNAL EXAMINATION**

The following observations are limited to findings other than injuries, if described above.

**INITIAL INCISION:**

**NECK:**

**CHEST/ABDOMINAL CAVITY:**

SYSTEMIC AND ORGAN REVIEW
**MUSCULOSKELETAL SYSTEM:**

**CARDIOVASCULAR SYSTEM:**



**RESPIRATORY SYSTEM:**

**GASTROINTESTINAL SYSTEM:**

**HEPATOBILIARY SYSTEM:**

**URINARY SYSTEM:**

**GENITAL SYSTEM:**

**HEMOLYMPHATIC SYSTEM:**

**ENDOCRINE SYSTEM:**

**SPECIAL SENSES:**

███████████████████████████████████████████████████████.

**HEAD AND CENTRAL NERVOUS SYSTEM:**

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

**SPINAL CORD:**

████████████████████████████████████████████████████████████████████████

**HISTOLOGIC SECTIONS:**

████████████████████████████████████████████████████████████████████████

**TOXICOLOGY:**

████████████████████████████████████████████████████████████████████████

**SPECIAL PROCEDURES:**

████████████████████████

**PHOTOGRAPHY:**
Photographs have been taken prior to and during the course of the autopsy.

**DIAGRAMS:**
Five diagrams were used during the performance of the autopsy. The diagrams are not intended to be facsimiles and are not drawn to scale.

**RADIOLOGY:**
X-rays are obtained and reveal the radiopacity consistent with recovered projectiles.

**EVIDENCE:**
Hair (head), nail scrapings, metal handcuffs, six bullet projectiles, and three barbed projectiles are collected.

# Exhibit C

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

```
MARY ELLEN LENNOX,              )
                                )
            Plaintiff,          ) Case No. 2:21-cv-02075 DAD-KJN
                                )
vs.                             )
                                )
CITY OF SACRAMENTO, et al.,     )
                                )
            Defendants.         )
_____
```

DEPOSITION OF
MARY ELLEN LENNOX
FEBRUARY 9, 2023

THROUGH REMOTE AUDIO/VISUAL TRANSMISSION

REPORTED BY:  AMY JO TREVINO, CSR #5296

**Ex. C-1**

1          BE IT REMEMBERED that on Thursday, the 9th day of

2    February, 2023, at the hour of 1:30 p.m. of said day, through

3    remote audio/visual transmission, before me, AMY JO TREVINO,

4    Certified Court Reporter, appeared MARY ELLEN LENNOX, who was

5    by me first duly sworn, and was examined as a witness in said

6    cause.

7                                -o0o-

8                          MARY ELLEN LENNOX,

9          called as a witness, having been duly sworn,

10                      testified as follows:

11

12                           EXAMINATION

13

14         BY MS. ESQUIVEL:

15         Q    Good afternoon, Ms. Lennox.  My name is Diana

16   Esquivel, and I represent the California Highway Patrol and

17   Officer Simpson in this lawsuit that you have brought arising

18   from the fatal shooting of your son on December 13, 2020, and

19   I'm here to take your deposition in connection with that

20   lawsuit.  Is that your understanding of why you are here today?

21         A    Yes, ma'am.

22         Q    Okay.  So have you had your deposition taken before?

23         A    No, never.

24         Q    Okay.  So let me just go over a couple of just

25   logistical matters with you.  Even though we are in, we are not

1    Q    Again, we're not in a hurry, so just take your time.

2  During those times from the 2016 to 2020 period did Jordan

3  provide you with financial support for your household expenses?

4    A    No.

5    Q    Did you ever provide him with financial support for

6  whatever expenses he may have had?

7    A    Yes.

8    Q    How frequently?

9    A    There was a time period that I paid his car payment

10  for several months.

11    Q    Anything else?

12    A    And ultimately I paid off his car so that he wouldn't

13  be taxed with the payments anymore.  He was my son, you know,

14  you help the people you love occasionally.  I would put a tank

15  of gas in his car, you know, that type of thing.  But I

16  provided a safe place to live and I provided all the food.

17    Q    During the 2016 to 2020 period did you ever pay for

18  his rent to live somewhere else outside of your home?

19    A    No.

20    Q    On December 13, 2020, on that specific morning of

21  December 13, 2020, were you in Oregon?

22    A    Yes.

23    Q    Is it fair to say that you have no personal knowledge

24  about what happened at the Bel Air store between Jordan and law

25  enforcement officers on the morning of December 13, 2020?

Mary Ellen Lennox                                      February 9, 2023

1      A      Correct, I have no personal knowledge.

2      Q      How did you find out that Jordan had passed away?

3      A      I received a phone call from an officer at about

4   between 5:00 and 5:30 on Sunday, December 13th, P.M.

5      Q      Do you recall what the officer told you as far as

6   Jordan is concerned?

7      A      It was a shock.  I can't say verbatim but yes, I can

8   recall what he said.

9      Q      First of all, do you remember the officer that called

10  you?

11     A      I don't remember his name right now.  I believe I

12  provided all of that to my attorneys.  My attorney.

13     Q      And what did the officer inform you?

14     A      First he asked if I was the parent of Jordan.  We

15  confirmed that.  Then he said there had been an incident and my

16  heart stopped, but I thought okay.  I thought maybe a car

17  accident or a crash.  And then he told me that Jordan had, I

18  don't know what he said, was deceased.  I don't think he said

19  been killed.  I don't know.  He said there had been an incident

20  and that Jordan was deceased, and I believe he told me how that

21  it had been at the hands of the police.

22     Q      Do you recall the officer mention anything about

23  Jordan having a knife?

24     A      I recall him saying that he was trying to cut his

25  throat.

Mary Ellen Lennox                                        February 9, 2023

```
 1  STATE OF CALIFORNIA      )
                             )  ss.
 2  SACRAMENTO COUNTY        )

 3           I, AMY JO TREVINO, a Certified Court Reporter in and

 4  for Sacramento County, State of California, do hereby certify;

 5           That on Thursday, February 9, 2023, at the hour of 1:30

 6  P.M. of said day, through audio visual transmission appeared

 7  MARY ELLEN LENNOX, who was duly sworn by me to testify the

 8  truth, the whole truth and nothing but the truth, and thereupon

 9  was deposed in the matter entitled herein;

10           That said deposition was taken in verbatim stenotype

11  notes by me and thereafter transcribed into typewriting as

12  herein appears;

13           That the foregoing transcript, consisting of pages 1

14  through 73, is a full, true and correct transcription of my

15  stenotype notes of said deposition.

16           DATED:  This 16th day of February 2023.

17

18                         _____

19                         AMY JO TREVINO, CSR #5296

20

21

22

23

24

25
```

# Exhibit D



Ex. A-1





BAKERY

MEAT & SEAFOOD

ORGANIC

COURTLAND

PIMEGRANATES
2 F⁰ $5
R

AVOCADOS
97¢
EA

Ex. A-3



