SUSANA ALCALA WOOD, City Attorney (SBN 156366)
SEAN D. RICHMOND, Senior Deputy City Attorney (SBN 210138)
srichmond@cityofsacramento.org
KATE D.L. BROSSEAU, Deputy City Attorney (SBN 345596)
kbrosseau@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA  95814-2608
Telephone:  (916) 808-5346
Facsimile:   (916) 808-7455

Attorneys for the CITY OF SACRAMENTO, MICHAEL PINOLA; TRAVIS HUNKAPILLAR; RUVIM TSVEROV; ROBERT LINDNER; ANGEL ESPINOZA; JOSEPH SWALEH; JASON FINNICUM; and JOHN HELMICH

ROB BONTA, State Bar No. 202668
Attorney General of California
CHRISTINE E. GARSKE, State Bar No. 232879
Supervising Deputy Attorney General
DIANA ESQUIVEL, State Bar No. 202954
Diana.Esquivel@doj.ca.gov
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7320
Facsimile: (916) 322-8288

Attorneys for STATE OF CALIFORNIA, BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL, AND MICHAEL SIMPSON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELLEN LENNOX, individually and as successor in interest to decedent Jordan Zenka,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO; COUNTY OF SACRAMENTO; STATE OF CALIFORNIA; MICHAEL PINOLA; MICHAEL SIMPSON; TRAVIS HUNKAPILLAR; RUVIM TSVEROV; ROBERT LINDNER; ANGEL ESPINOZA; | Case No.:  2:21-cv-02075 DAD-CSK<br><br>DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE ANY ARGUMENT REGARDING A "SUICIDE BY COP" THEORY |

1

JOSEPH SWALEH; JASON FINNICUM; and JOHN HELMICH,

Defendants.

I.

## INTRODUCTION

This matter arises from the fatal interaction between Decedent Jordan Zenka, and Defendant Officers Michael Pinola; Michael Simpson; Travis Hunkapillar; Ruvim Tsverov; Robert Lindner; Angel Espinoza; Joseph Swaleh; Jason Finnicum; and John Helmich on December 13, 2020. On that day, Mr. Zenka crashed his vehicle into the Bel Air market on Arena Boulevard in Sacramento. Following his collision, Mr. Zenka ran into the store and made contact with several employees. During the course of his interactions with the employees, Mr. Zenka informed them that he was fearful that someone was trying to kill him, that he needed to kill himself before "they" did, and that he did not want to go to jail. During the course of these interactions, Mr. Zenka also first used safety scissors, then a large serrated knife, to slice into his neck and arm. Once Defendant officers arrived on-scene, Mr. Zenka repeatedly moved the knife between various life-threatening positions such as appearing to slice his wrist, pointing the tip of the knife at his abdomen, and also bringing the blade of the knife to his neck.

Defendant-officers attempted to contact Mr. Zenka and gain his voluntary compliance in disarming so that his self-inflicted wounds could be treated. Ultimately however, as Mr. Zenka was unresponsive to Defendant-officers' commands to disarm, and as he was bleeding profusely in the midst of a medical emergency, Defendant officers formed a contact team, first using less-lethal munitions in an attempt to disarm Mr. Zenka, and then using lethal force as Mr. Zenka suddenly and rapidly approached Officers Pinola and Simpson with the knife unsheathed and within striking distance.

In her second Motion *in limine*, Plaintiff asserts her belief that Defendants intend to offer a theory of "suicide by cop" to the jury to justify Defendant-officers' actions. However, despite the fact that Defendants have no intention of offering such a theory, Plaintiff's motion is

entirely overbroad and attempts to improperly exclude all references to "suicide," Mr. Zenka's state of mind, or statements he made to Bel Air employees. *See* Plaintiff's Motion *in limine* No. 2, pgs. 2-3, 5-6, 7. Plaintiff attempts to include these clearly relevant facts under numerous guises, namely (1) Mr. Zenka's self-injury would confuse the jury; (2) Mr. Zenka's state of mind has no bearing on any disputed fact; (3) facts which may reflect Mr. Zenka's state of mind are unfairly prejudicial; (4) Mr. Zenka's state of mind is improper character evidence; and (5) Defendants have not designated an expert specifically to opine on Mr. Zenka's apparent suicidal ideation. *Id.*

Instead, Defendants contest Plaintiff's assertions to the extent that their motion would preclude the bare testimony of Bel Air employees and the statements made by Mr. Zenka to them, and to the extent that facts which would tend to reflect Mr. Zenka's unresponsive state of mind, or his apparent suicidal actions both prior to and during his interaction with Defendant-officers. While Defendants do not intend to argue or imply that Mr. Zenka desired to commit suicide by way of eliciting any officer's use of force, Defendant-officers must be able to point to Mr. Zenka's actions of self-harm, his lack of responsiveness, and his troubling statements because they not only reflect the totality of the circumstances faced by officers, but also tend to show a glimpse into Mr. Zenka's ability to engage with other, alternate means attempted by Defendant-officers to de-escalate the situation. Consequently, these facts are necessary for Defendants to present so that the jury can see the full scope of the scene in which Defendant-officers found themselves on December 13, 2020, and Defendants should not be precluded from presenting them at trial.

## II.

## ARGUMENT

### I. Mr. Zenka's Self-Inflicted Injuries Are Tantamount to a Suicide Attempt and Are Relevant to This Matter

In her second Motion *in limine*, Plaintiff alleges that a theory of "suicide by cop" is irrelevant to the matter at hand. As noted above, and as acknowledged within Plaintiff's own motion, Defendants do not intend to bring such a theory at trial. *See* Pl's Mot., p. 2. Yet, the

fact remains that mention of Mr. Zenka's self-harm-based actions and statements immediately preceding and during the incident are necessary to present to the jury on a contextual basis alone. Without information regarding the injuries Mr. Zenka inflicted on himself, or statements he made to grocery staff as he caused those injuries, the jury will be left with an incomplete picture of the events of this matter. Instead, if Plaintiff's motion is read to exclude all mention of Mr. Zenka's injuries and statements regarding self-harm, including the testimony of the employees at the scene, the jury will dropped into the middle of a complicated incident and left to decide this case with more questions than facts.

Further, in light of the obvious nature of Mr. Zenka's self-inflicted knife wounds, if Plaintiff's motion is to be read to equally exclude use of the word "suicide" entirely, such exclusion will equally leave the jury with more questions than facts. It is clear from Mr. Zenka's statements to grocery staff, as well as his actions in slicing his neck and wrists repeatedly with a knife, that Mr. Zenka made a suicide attempt at the outset of this incident, and that attempt necessitated a response by the Sacramento Police Department (SPD), who were called to the scene by the horrified, onlooking grocery staff. Additionally, Mr. Zenka's attempt at suicide left him bleeding profusely at the scene, and his unwillingness to disarm himself left first responders unable to provide urgent and need medical care to him. Thus, Mr. Zenka's suicide attempt not only necessitated SPD's response to the scene, but also necessitated Defendant-officers' uses of force so that Mr. Zenka could be properly disarmed and medical care provided.

Thus, whether or not Mr. Zenka's statements to grocery staff were known to officers at the time of the incident does not preclude evidence of his self-harm or statements under Federal Rule of Evidence (FRE) 401. By contrast, Mr. Zenka's statements and actions of self-harm have direct bearing on the reason for Defendant-officers initial response to the scene. Mr. Zenka's obvious and visible injuries, combined with his continued efforts to slice at his body with the knife in front of officers also has direct bearing on the officers' perception of the incident as a whole and Mr. Zenka's increasingly urgent need for medical attention. As such, both Mr. Zenka's statements to grocery staff regarding wanting to kill himself, and his actions

in slicing his neck and arms with a large knife, heavily bear on the probability of Defendant-officers' reasons to respond to the scene and to Mr. Zenka. *See* FRE 401(a). As an extension of that analysis, the reason for Defendant-officers' response to the scene is directly relevant to their defense; in fact, Defendant-officers' response to Mr. Zenka was a direct result of Mr. Zenka's self-harm and urgent medical needs, thereby making these facts "of consequence" in this matter. *See* FRE 401(b).

Accordingly, Mr. Zenka's self-harm, and statements regarding suicide, are directly relevant to this matter and should not be excluded.

## II. Relevant Evidence Regarding Mr. Zenka's State of Mind Should Be Admitted

The above discussion regarding relevance of Mr. Zenka's suicidal statements equally applies to Plaintiff's argument regarding Mr. Zenka's state of mind. It also applies with equal force to statements Mr. Zenka made to grocery staff regarding his desire not to go to jail. Both of these statements made by Mr. Zenka to grocery staff are not only directly relevant to this matter, as defined by FRE 401, but also to the analysis Plaintiff's own motion details regarding excessive force. *See* Pl's Mot., p. 5. In her argument, Plaintiff indicates her position that statements reflecting Mr. Zenka's state of mind are not relevant to the excessive force analysis, listing a number of factors for jury consideration. *Id.* However, Mr. Zenka's state of mind, and by extension, evidence reflecting the same, are directly related to at least four of the five factors Plaintiff notes for jury consideration in regards to excessive force. *Id.*

As discussed at length above, Mr. Zenka's state of mind, by way of the statements he made to grocery staff and which necessitated any police response at all, is objectively related to "the nature of the circumstances to which the Officer Defendants were responding. Ninth Circuit Manual of Model Jury Civil Instructions, No. 9.25(1). Similarly, Mr. Zenka's statements, in conjunction with his self-inflicted injuries, have at least some bearing as to whether he posed a danger to the officers or others, including himself. *Id.* at (2). Further, Mr. Zenka's statements are equally related to whether or not he was attempting to flee, or was actively resisting arrest, this is particularly true as it relates to statements he made to grocery staff indicating his fear of going to jail. *Id.* at (3). Finally, Mr. Zenka's state of mind at the time of the incident bears on

the probability that any available or alternate means to take him into custody would have been effective. *Id.* at (4). Surely, if Mr. Zenka had a fear of going to jail, and thus being arrested, a jury could contextualize Mr. Zenka's unresponsiveness to officers' efforts to negotiate, de-escalate, and use minimal force. *See also Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir.2003) [stating that a detainee's mental illness must be reflected in any assessment of the government's interest in the use of force].

Accordingly, a jury should be entitled to evaluate these statements at their bare factual basis. Such opportunity allows the jury to determine for themselves whether Defendant-officers' uses of force were justifiable in light of the totality of the circumstances, including evidence which has a probability of showing a glimpse into Mr. Zenka's state of mind. *See Kim v. City of Santa Clara*, 448 Fed.Appx. 780, 782 (9th Cir. 2011); *see also* Ninth Circuit Manual of Model Jury Civil Instructions, No. 9.25, comment, citing *Nehad v. Browder,* 929 F.3d 1125, 1137 (9th Cir. 2019). Thus, evidence reflecting Mr. Zenka's state of mind, including his suicidal statements and actions during the incident, are relevant to this matter, even if Defendants do not intend to offer such evidence as a theory of "suicide by cop."

    a. Undue Prejudice

As stated on several occasions here already, contrary to Plaintiff's assertions, Defendants have no intention of presenting a theory of "suicide by cop" to the jury. It is not Defendants' position that, as Plaintiff asserts, it is proper "to shoot someone merely because that person may have a death wish." *See* Pl's Mot., p.6. Accordingly, Defendants do not believe that any prejudice which could be elicited from the presentation of Mr. Zenka's statements regarding suicide or jail, as well as his obvious and visible self-inflicted injuries prior to and during the incident, would be substantially outweighed by unfair prejudice. *Id.; See* FRE 403. These facts serve as a basis for SPD's need to respond to the scene of the incident, and as a basis for the exhaustion of other means by which Defendant-Officers could contain Mr. Zenka within an urgent timeframe, not to any purported motivation by Mr. Zenka to die at the hands of police. Accordingly, Plaintiff's argument for exclusion under FRE 403 fails, and the evidence of Mr. Zenka's statements and self-harm should not be excluded.

  b. Character Evidence

  Plaintiff's further contention that evidence of Mr. Zenka's state of mind, particularly regarding suicidal ideations, is improper character evidence is, in and of itself, a mischaracterization of the Rule as it applies to the evidence. *See* FRE 404; *See also* Pl's Mot., p. 8-9. Plaintiff's motion should not be read so broadly as to exclude all evidence reflecting Mr. Zenka's own statement regarding his desire to kill himself at the outset of the incident, as this direct statement from the decedent himself, and it is not a nebulous analysis of Mr. Zenka's character or his traits, much less that he acted in conformity with them. Instead, the use of such a statement reflects the cause of Mr. Zenka's self-inflicted injuries, as well as the reason for SPD's initial response to the incident. Accordingly, as Defendants do not intend to enter this evidence to show that Mr. Zenka was attempting to commit "suicide by cop," Plaintiff's contentions that Mr. Zenka's suicidal statements may be used to show that he acted in conformity with those ideations to provoke a use of force are nullified and the statements or other evidence regarding Mr. Zenka's state of mind should not be excluded.

  III. Evidence Regarding Mr. Zenka's Self-Inflicted Wounds Speaks for Itself

  As Plaintiff's motion relates to a theory of "suicide by cop" and expert testimony needed to opine on that subject, Plaintiff's motion again reads to broadly. As noted numerous time above, Defendants do not intend to offer such a theory to the jury. Instead, Defendants intend to offer only the bare factual evidence of Mr. Zenka's statements to grocery staff regarding killing himself and jail, as well as his actions in slicing into his neck and arms with a large, serrated-knife thereby causing substantial self-injury. Defendants intend to offer these facts, as stated above, to contextualize SPD's need to respond to the scene of the incident, as well as to contextualize Defendant-officers' need to urgently gain compliance from Mr. Zenka as he was bleeding profusely from his self-inflicted wounds and required urgent medical care as a result.

  Both Mr. Zenka's statements and his self-harm actions were witnessed by grocery employees, some of whom placed the initial call to SPD and thus caused a police response to the store. The grocery employees who witnessed these events and who also heard the statements made directly by Mr. Zenka have been designated as witnesses for the defense.

Further, as the statements were made by Mr. Zenka to the employees, and as the statements are being offered by a party adverse to Mr. Zenka, these statements do not run afoul of hearsay rules which would otherwise prevent their inclusion. *See* FRE 801(b)(2)(A). Neither are these statements or actions witnessed and heard by grocery staff, and those actions also captured by video footage within the store, conclusory in any way. As such, the statements and actions are not properly classified as expert opinion, nor does their use as a contextual background require expert testimony to admit them. *See* FRE 701(a); *See also* FRE 702. Accordingly, the statements made by Mr. Zenka to grocery staff, and any evidence reflecting Mr. Zenka's self-harming actions on the date of the incident should not be excluded.

### III.

### CONCLUSION

For the forgoing reasons, Defendants oppose Plaintiff's Motion *in limine* No. 2 to the extent that they should not be excluded from offering statements made by Mr. Zenka regarding suicide or jail, nor should they be excluded from offering any evidence reflecting Mr. Zenka's self-harming actions or use of a knife on himself on the date of the incident.

Respectfully submitted.

DATED: February 4, 2025

SUSANA ALCALA WOOD,
City Attorney

By: /s/ SEAN D. RICHMOND
SEAN D. RICHMOND
Senior Deputy City Attorney

Attorneys for the
CITY OF SACRAMENTO, MICHAEL PINOLA; TRAVIS HUNKAPILLAR; RUVIM TSVEROV; ROBERT LINDNER; ANGEL ESPINOZA; JOSEPH SWALEH; JASON FINNICUM; and JOHN HELMICH