ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
DIANA ESQUIVEL, State Bar No. 202954
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7320
 Facsimile: (916) 322-8288
 E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendants State of California, by and through the California Highway Patrol, and Michael Simpson*

SUSANA ALCALA WOOD, City Attorney (SBN 156366)
SEAN D. RICHMOND, Senior Deputy Attorney (SBN 210138)
srichmond@cityofsacramento.org
KATE D.L. BROSSEAU, Deputy City Attorney (SBN 345596)
kbrosseau@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA 95814-2608
Telephone: (916) 808-5346
Facsimile: (916) 808-7455
*Attorneys for Defendants the City of Sacramento, Michael Pinola, Travis Hunkapiller, Ruvim Tsverov, Robert Lindner, Angel Espinoza, Joseph Swaleh, Jason Finnecum, and John Helmich*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MARY ELLEN LENNOX,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO, et al.,<br><br>　　　　　　　　　　　Defendants. | No. 2:21-cv-02075 DAD-CSK<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 REGARDING UNKNOWN INFORMATION; SUPPORTING DECLARATION**<br><br>Trial:　　　　February 18, 2025<br>Time:　　　　9:00 a.m.<br>Courtroom:　4 (15th Floor)<br>Judge:　　　Hon. Dale A. Drozd<br>Action Filed: August 26, 2021 |

1

**INTRODUCTION**

Defendants oppose Plaintiff's motion to exclude several categories of information unknown to the officers at the time of their encounter with decedent Jordan Zenka. Plaintiff's motion is misplaced because evidence of Zenka's drug and alcohol use, police encounter, and conversation with store employees are relevant to Plaintiff's damages claims and the reasonableness of the officers' use of force, in addition to being party admissions.

**ARGUMENT**

Federal Rule of Evidence 402 provides that all relevant evidence is admissible and evidence that is not relevant is inadmissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Relevant evidence may be excluded if it will cause prejudice, undue delay, a waste of time, or a needless presentation of cumulative evidence in the discretion of the court. Fed. R. Evid. 403; *Obrey v. Johnson*, 440 F.3d 691, 698 (9th Cir. 2005).

**I.   EVIDENCE OF ZENKA'S DRUG AND ALCOHOL ABUSE AND TOXICOLOGY RESULTS ARE RELEVANT TO DAMAGES AND LIABILITY**

The admissibility of evidence concerning Zenka's toxicology results, drug and alcohol abuse is the subject matter of the State Defendants' Motion in Limine No. 1, and Defendants incorporate it into this opposition. (*See* ECF No. 90.)

First, evidence of Zenka's drug abuse is relevant to the damages Plaintiff seeks under the Fourteenth Amendment and wrongful death claims. Wrongful death damages can include the pecuniary value of decedent's society, comfort, care, and protection, as well as the value of the benefits, including personal services, advice, and training, that the heirs could have expected to receive from the decedent. *Corder v. Corder*, 41 Cal. 4th 644, 661 (2007). In assessing a claimed loss of society, comfort, and affection, factors that may be considered include the closeness of the family unit, the depth of their love and affection, and the character of the decedent as kind, attentive, and loving. *Id*. at 662; *Mendoza v. Cty. of West Covina*, 206 Cal. App. 4th 701, 721 (2012). A Fourteenth Amendment claim for interference with the familial relationship is not

2

duplicative of a California law wrongful death claim. *See Chaudhary v. Cty. of L.A.*, 751 F.3d 1096, 1106 (9th Cir. 2014). The familial-relationship claim is based on the related deprivation of Plaintiff's own liberty interest arising out of her relationship with the decedent. *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 371 (9th Cir. 1998). Evidence of Zenka's alcohol and drug abuse is relevant to show the closeness of Plaintiff and Zenka's relationship and loss of that relationship, companionship, comfort, and affection. *Est. of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI-SAB, 2022 WL 1123117, at *27 (E.D. Cal. Apr. 14, 2022) (finding that evidence of decedent's incarceration and alcohol and drug use was relevant to the issue of damages on Fourteenth Amendment and wrongful death claims because incarceration and substance abuse "would affect the nature and closeness of" decedent's relationships with the plaintiffs). Zenka's rehabilitation records show that he admitted to being a binge drinker, consuming a pint of vodka, in addition to other liquor, on a daily basis, that he stole from his mother to support his habit, that he was diagnosed with amphetamine-type substance use disorder, and that his mother had told him that she was "fearful" of him. (Pacific Crest Records at PLTF 0042, 0043, 0045, 0047, 0060, attached here as Ex. A.) The statements and evidence speaks directly to the nature and extent of Plaintiff's relationship with Zenka. Thus, its probative value outweighs any prejudicial effect the evidence would have.

Further, Zenka's statements are party admissions, not hearsay. Fed. R. Evid. 801(d)(2)(A). They are also statements of Zenka's then-existing condition and state of mind and were made for medical diagnosis and treatment, and are therefore exceptions to the hearsay rule if such statements are deemed hearsay. *Id*. 803(3), (4). Because Zenka's alcohol and drug abuse is directly relevant to Plaintiff's damages claims, such evidence is admissible. Any prejudicial effect they may have can be cured with a limiting instruction.

Under *Crawford v. City of Bakersfield*, 944 F.3d 1070 (9th Cir. 2019), evidence of Zenka's alcohol and drug abuse, including the results of the toxicology report, are relevant to liability. The Ninth Circuit held that the exclusion of decedent Dozer's mental-health history that was unknown to the officers at the time of the incident was reversible error, reasoning that:

3

Defs.' Joint Opposition to Pl.'s MIL No. 1 re Unknown Information
(2:21-cv-02075-DAD-CSK)

> Evidence that Dozer had previously behaved in ways consistent with mental illness and had been taken to mental health providers for treatment, makes it more likely that he continued to suffer from mental illness on the day of the shooting. In turn, whether Dozer was in fact mentally ill that day is relevant to whether he would have appeared to be mentally ill, and thus to whether [the officer] knew or should have known that Dozer was mentally ill; after all, the existence of some underlying fact tends to make it more likely that a person knew or should have known that fact."

*Id*. at 1078-79.

Here, evidence that Zenka was under the influence of methamphetamine and amphetamine supports the Defendants' version of events that he was acting irrationally and could have been attributable to the narcotics rather than mental crisis, especially when there is absolutely no evidence that Zenka has a history of mental illness. (*See* State Defs.' Mot. In Limine No. 1, ECF No. 85.) The toxicology report supports several Defendants' account that Zenka appeared to be under the influence, such that their use of force was reasonable. Thus, t\The probative value of this evidence outweighs any prejudicial effect it may have. The Court should therefore admit evidence of Zenka's alcohol abuse and the toxicology report or the results of the toxicology report.

**II.    ZENKA'S POLICE ENCOUNTER FOR VANDALISM IS RELEVANT TO DAMAGES**

As discussed above, the nature and closeness of Plaintiff's relationship is relevant to her damages claims under federal and California law. Events or factors that would have impacted that relationship are relevant and admissible. Here, the anticipated evidence will show that Plaintiff suspected Zenka of vandalizing her car, called the police, and he was arrested. (Lennox Dep. 38:1-39:22, attached here as Ex. B.) Plaintiff asked Zenka to leave the residence because she suspected that he was "using alcohol extensively." (*Id*. 40:21-41:6.) This evidence is directly relevant to the nature of Plaintiff's relationship with Zenka, and is therefore admissible. Any prejudicial effect can be cured with a limiting instruction.

**III.   ZENKA'S BOOKS AND WRITINGS**

During the parties' meet and confer efforts, Defendants agreed that they would not seek to introduce into evidence or elicit testimony about notes and other handwritten items, including a book on witch craft, that were found among Zenka's property after the incident. Plaintiff's counsel e-mailed Defendants' attorneys the specific items they sought to exclude.

4

Defs.' Joint Opposition to Pl.'s MIL No. 1 re Unknown Information
(2:21-cv-02075-DAD-CSK)

However, after further discussion, Plaintiff's counsel sought to expand the scope of this agreement without specifying what additional material they sought to exclude. Counsel for Defendants could not agree to such an overbroad request without being provided the "other" material Plaintiff sought to exclude. If Plaintiff's attorney provides or identifies with sufficient specificity the "other" material they seek to exclude, the Defendants can more adequately respond to this portion of the motion. In any event, Defendants are agreeable to the exclusion of the writings, drawings, and books on the occult that opposing counsel e-mailed to defense counsel.

### IV. ZENKA'S STATEMENTS TO THE GROCERY EMPLOYEES ARE PARTY ADMISSIONS

An out-of-court statement offered to prove the truth of the matter asserted is hearsay. Fed. R. Evid. 801(c). But an out-of-court statement made by—and offered against—an opposing party is "not hearsay." Fed. R. Evid. 801(d)(2)(A).

Defendants anticipate to elicit testimony from the grocery employees, who witnessed Zenka enter the store and hurt himself, comments or statement that Zenka made. In particular, one witness stated during his interview that Zenka made a comment to the effect that he could not go to jail. Zenka's statements to the employees are party admissions and therefore not hearsay. Plaintiff's motion does not specify what statements she seeks to exclude such that Defendants cannot address whether any hearsay exception may apply. Zenka's statements are relevant to his state of mind and potential intentions. The Court should therefore deny this motion, and Plaintiff's counsel can object at the time of witnesses testify.

/ / /

/ / /

/ / /

/ / /

/ / /

5

Defs.' Joint Opposition to Pl.'s MIL No. 1 re Unknown Information
(2:21-cv-02075-DAD-CSK)

# CONCLUSION

For the foregoing reasons, Defendants jointly request that the Court deny Plaintiff's motion in limine to exclude evidence of Zenka's toxicology results, drug and alcohol abuse, arrest for vandalism, and statements he made to store employees. Defendants further request that the Court deny the motion as to the "other" material found among Zenka's property which has not been specifically identified.

Dated: February 4, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State of Cal. and Simpson*

Dated: February 4, 2025

SUSANA ALCALA WOOD,
City Attorney

*/s/ Kate D.L. Brosseau* (as authorized 2/4/25)

KATE D.L. BROSSEAU
Deputy City Attorney
*Attorneys for Defendants the City of Sacramento*

SA2021305171
38743837.docx

6

Defs.' Joint Opposition to Pl.'s MIL No. 1 re Unknown Information
(2:21-cv-02075-DAD-CSK)

# Exhibit A

N/A

What cultural challenges will affect the client's recovery?

N/A

## VIII. CURRENT FINANCIAL STATUS

Current Financial Status & How does Client pay for Drug/Alcohol Addiction

Mother

## IX. ADDICTION & RELAPSE HISTORY / CONSEQUENCES OF ADDICTION

Describe client's Addiction & Relapse History and the consequences of addiction (include legal, social, emotional, and behavioral)

Declined to answer

## X. CHEMICAL DEPENDENCY HISTORY & ASSESSMENT

Substance History

|  | First Used | Last Used | Frequency of use past 30 days | Amount used past 30 days | Frequency of use past year | Amount used past year | Method |
|---|---|---|---|---|---|---|---|
| Alcohol | 16 y/o | 9/2/20 | Daily | "Not consistent use I binge, when I do I drink multiple bottles of wine and vodka" | every few weeks for 2-3 days | "Not consistent use I binge, when I do I drink multiple bottles of wine and vodka" | oral |
| Amphetamines | 23 y/o | 4-5 months ago | denies | denies | not often | maybe a gram | smoking |
| Cocaine | denies |  |  |  |  |  |  |
| Crack | denies |  |  |  |  |  |  |
| Heroin | denies |  |  |  |  |  |  |
| Oxys/Roxys | denies |  |  |  |  |  |  |
| Percocets | denies |  |  |  |  |  |  |
| Xanax | denies |  |  |  |  |  |  |
| Klonopin | denies |  |  |  |  |  |  |
| Marijuana | denies |  |  |  |  |  |  |

Other Drugs Used ☑ None

## Current Withdrawal Symptoms

Nausea, Anxiety, Abdominal Cramps, Sweats, Tremors, Sleep Disturbance, Poor Appetite, Headaches

## Assessment for Other Addictive Disorders:

## History of Other Addictive Behaviors:

Eating Disorders? Denied

Has the Client ever received treatment for an Eating Disorder ☐ Yes ☑ No

Is Eating Disorder still an issue for you? ☐ Yes ☑ No

PLTF 0042

**Does the Client have a history of Gambling?** None

**Does the Client feel that gambling is an issue for them?** ☐ Yes ☑ No

**Are there other addictive behaviors (work, nicotine, sex, caffeine, shopping, and/or exercising) that the Client has a problem with?** None

**Are there any other addictive disorders that will need to be addressed in treatment?** None

**List Drugs of Choice:**

1. Alcohol
2. Coffee
3. Marijuana
4.

**What and how long has the Client been using "Drug of Choice" #1?**

On and off for 8 years

**How much has the Client been using "Drug of Choice" #1?**

"Not consistent use I binge, when I do I drink multiple bottles of wine and vodka"

**What is length of time of the last "Run"?**

2 days

**What, when, and how much was the last drug used? (In the past 24 hours)**

2 cans of Mikes hard lemonade and 1 bottle of pint Vodka (cheap)

**What, when, and how much was the last drug used? (In the past 72 hours)**

2 cans of Mikes hard lemonade and 1 bottle of pint Vodka (cheap)

**How much has the client used in the past 10 days on a daily basis.**

2 cans of Mikes hard lemonade and 1 bottle of pint Vodka (cheap)

**Age of 1st Use of Any drug?**

18

**How long has this current problem been going on/length of current Relapse?**

8 yrs

**Drug Craving: (Range 0-10, 10 being highest)**

4

**AA or NA experience**

no

**How is client supporting his/her alcohol/drug usage?**

Work for money

**Currently living with?**

Mother

**Does this person use alcohol/drugs?**

PLTF 0043

3. Does Client currently engage in any substance-free leisure activities or hobbies? Yes

4. What strengths does the Client have that will assist them in regards to recovery?

Wants to change, open minded

5. Additional information / comments concerning recovery environment issues:

Client currently lives with mother/ homeless. Client is currently unemployed. Client's mother is very concerned about the clients alcohol consumption. This writer believes that the Client's support system outside of family members is low per their report.

## XVI. SPIRITUALITY ASSESSMENT

1. Do you use prayer/meditation in your life? No

2. How do you express your spirituality?

Declined to answer

3. Who or what provides you with strength and hope?

Declined to answer

4. How would you describe your philosophy of life?

Declined to answer

5. Do you have any spiritual goals? No

6. Do you currently practice any specific religious denomination or have any significant religious beliefs/practices?

No

a. How has the role of church/synagogue been important in your life?

Declined to answer

7. Is there any type of spiritual/religious support that you desire at this time? No

8. How has a belief in God/Spirituality been important in your life?

All

9. How does your faith help you cope with problems in your life?

Private

10. How has your drug of choice caused you to compromise your value system? (i.e., values include: honesty, integrity, respect for others, etc.) (sense of right or wrong including stealing, lying, cheating, etc.)?

Stole cans from mother, integrity

a. Describe how compromising your value system has affected your self-worth and/or self-esteem (including issues regarding guilt, shame, depression, self-destruction, feelings of inadequacy, etc.)

None

CLINICAL IMPRESSIONS:
*Include the impact of spirituality on the ability of the individual to receive care/services/determination of any barriers to treatment and/or affiliation with certain types of self-help groups, and if any further assessments are needed.*

Huge

## ASSESSMENT OF MENTAL STATUS DURING INTERVIEW

PLTF 0045

## Detoxification of alcohol and medical stabilization

Client's perception of strengths and liability related to recovery:

| Strengths | Liability |
|---|---|
| Willingness to seek treatment | Impulsive |

### REASON FOR TREATMENT AT THIS TIME / GOAL FOR TREATMENT

"I'm tired of this, I need help, I need to get sober"

Goal: Patient will be medically stabilized, complete a safe medical detox, follow staff recommendations for ongoing treatment and/or discharge plans, transfer to lower level of care as deemed by treatment team and medical necessity, and begin to engage in the therapeutic group treatment process.

Diagnosis:                                              Diagnoses
F10.20 Alcohol use disorder, Severe, F15.11 Amphetamine-type substance use disorder, Mild, in early or sustained remission

List Problems Identified in Bio-Psychosocial

**Problem List Empty**

*If a problem is identified, but not to be treated in treatment, add to Problem List and Check to either Defer or Refer.*

### Criteria for Substance Use Disorders

Answer Yes/No/NA

| | DOC | Second | Third | Fourth | Five | Other |
|---|---|---|---|---|---|---|
| 1. List Drugs | Alcohol | | | | | |
| 2. Have you been taking the substance in larger amounts or for longer than you're meant to? | Yes | | | | | |
| 2. Have you wanted to cut down or stop using the substance but unable to? | Yes | | | | | |
| 3. Have you spent a lot of time getting, using, or recovering from use of the substance? | Yes | | | | | |
| 4. Do you have cravings and urges to use the substance? | Yes | | | | | |
| 5. Have you not been able to do what you should at work, home, or school because of substance use? | Yes | | | | | |
| 6. Have you continued to use, even when it causes problems in relationships? | Yes | | | | | |
| 7. Have you given up important social, occupational, or recreational activities because of substance use? | Yes | | | | | |
| 8. Have you used substances again and again, even when it puts you in danger? | Yes | | | | | |
| 9. Have you continued to use, even when you know you have a physical or psychological problem that could have been caused or made worse by the substance? | Yes | | | | | |
| 10. Have you needed more of the substance to get the effect you want (tolerance)? | Yes | | | | | |
| 11. Have you had withdrawal symptoms, which can be relieved by taking more of the substance? | Yes | | | | | |

**Severity of Substance Use Disorders** - Two or three symptoms indicate a mild substance use disorder; - Four or five symptoms indicate a moderate substance use disorder, - Six or more symptoms indicate a severe substance use disorder.

ASAM 6 dimensions for primary substance

PLTF 0047

Melissa Tucker (Staff), 09/08/2020 06:25 PM

*[signature]*
Niccolette Ramsey, LPC. (Review), NPI Number 1891087581, 09/08/2020 10:03 PM

## Monday, Sep 7, 2020

### PCTD Group Therapy Evening 07:30 PM PDT by Carol Bethard

Status: attended

Start: 09/07/2020 07:30 PM
End: 09/07/2020 08:30 PM
Duration: 01:00

**Topic**
Group Check In/ The Brain and Substance Misuse

**Individual Assessment/Intervention**
JZ was present and participated in the beginning of group. JZ seemed to be agitated and anxious with nights event as evidence by not sitting for long and getting up to stand or pace during group. JZ got up before the end of group and did not come to a plan.

**Group Description**
How are you feeling mentally? emotionally? physically? spiritually? What triggers my strongest cravings? What triggers might I have that are very subtle? What can I tell myself about craving in a matter-of-fact way? When are some times that I was or am able to resist cravings? How was I able to do that? What might be some additional behavioral strategies that I can use when I have an episode of craving?

*[signature: CAB]*
Carol Bethard (Staff), 09/07/2020 10:19 PM

*[signature]*
Niccolette Ramsey, LPC. (Review), NPI Number 1891087581, 09/08/2020 10:02 PM

Tuesday, Sep 8, 2020
PCTD Group Session Afternoon 12:15 PM PCT by [illegible]
Status: attended

Topic
We started with a MFPS check in. Talked about when dealing with stress and anxiety we [illegible] present, we ended by discussing the [illegible] [illegible] importance of continuing to [illegible] [illegible] well and we feel healthy

Individual Assessment/Intervention
Client was present for entire group. Client [illegible]

## Sunday, Sep 6, 2020

### PCTD Group Session Evening 08:00 PM PDT by Carol Bethard

Status: attended

Start: 09/06/2020 08:00 PM
End: 09/06/2020 09:15 PM
Duration: 01:15

**Topic**
Check in and Gratitude

**Individual Assessment/Intervention**
JZ was present and participated in group. JZ seemed to open up more tonight saying, "I feel like I am being more honest than I have before because I feel safe here. Before I have always watched people trying to see what they are trying to take or how they are trying to take advantage of me." JZ also reflected on a new thought about his mother and her worries for him saying, "My mom has told me before that she is fearful of me and I always thought is was weird because I was never going to hurt her,

PLTF 0060

# Exhibit B

```
                 IN THE UNITED STATES DISTRICT COURT

               FOR THE EASTERN DISTRICT OF CALIFORNIA

                         SACRAMENTO DIVISION


    MARY ELLEN LENNOX,            )
                                  )
                 Plaintiff,       ) Case No. 2:21-cv-02075 DAD-KJN
                                  )
    vs.                           )
                                  )
    CITY OF SACRAMENTO, et al.,   )
                                  )
                 Defendants.      )
    _____



                            DEPOSITION OF
                         MARY ELLEN LENNOX
                         FEBRUARY 9, 2023

                THROUGH REMOTE AUDIO/VISUAL TRANSMISSION




                REPORTED BY:  AMY JO TREVINO, CSR #5296
```

```
 1      Q    During the 2016 to 2020 period when Jordan was living
 2   on and off with you, did he ever -- was he ever arrested or had
 3   other encounters with law enforcement that you are aware of?
 4           MS. BAGDASSARIAN:  Objection, relevance.  Lacks
 5   foundation.  Calls for speculation.  Assumes facts not in
 6   evidence.  You can answer.
 7           THE WITNESS:  Yes.
 8           MS. ESQUIVEL:
 9      Q    And how did you come to know that?
10      A    He was living with me at the time.
11      Q    And what happened that came to your attention that he
12   had been arrested or had other dealings with law enforcement?
13      A    My car had been vandalized and I called the police.
14      Q    Okay, I'm sorry, and what did that have to do with
15   Jordan?  I guess I'm not understanding.
16      A    Jordan was living with me at the time.  George
17   Cardenas was also living in my home.  My car was vandalized,
18   and I suspected it was one of them, and I called the police.
19      Q    Were either George or Jordan arrested?
20      A    Yes.
21      Q    Which one?
22      A    Jordan.
23      Q    Do you know why Jordan was arrested?
24           MS. BAGDASSARIAN:  Objection, calls for speculation.
25   Lacks foundation.  You can answer if you know.
```

1        THE WITNESS: I don't know. The police on scene
2   talked to George and Jordan and that was the result. I wasn't
3   there for the conversation.
4        MS. ESQUIVEL:
5    Q   Any other instances that you are aware of that Jordan
6   had interaction with law enforcement during the time period
7   that he was living with you from 2016 to 2020?
8    A   No.
9    Q   How long -- when Jordan was arrested as you just
10  testified, during that incident when your car was vandalized,
11  how long did George Cardenas live with you when that incident
12  occurred?
13       MS. BAGDASSARIAN: Objection, relevance. You can
14  answer if you know.
15       THE WITNESS: Please clarify. How long had he or how
16  long after?
17       MS. ESQUIVEL:
18   Q   Both. What was the time period that he lived with you
19  that encompassed that incident where Jordan was arrested?
20   A   I estimate George was living in my home approximately
21  four months, and after the incident I asked him to leave and he
22  did.
23   Q   Do you recall what year this was?
24   A   I'm going to guess it was 2017, but I don't recall
25  specifically.

1    Q    And during that approximate four-month period that
2  George lived with you did you observe the relationship between
3  him and Jordan?
4         MS. BAGDASSARIAN:  Objection, relevance.  Vague.  You
5  can answer if you understand the question.
6         THE WITNESS:  I'm not clear on the question.
7         MS. ESQUIVEL:
8    Q    You saw them interact with one another, correct?
9         MS. BAGDASSARIAN:  Same objections.  You can answer.
10        THE WITNESS:  Yes.
11        MS. ESQUIVEL:
12   Q    Did they appear to be happy in their relationship?
13        MS. BAGDASSARIAN:  Objection, vague.
14        THE WITNESS:  Yes.
15        MS. ESQUIVEL:
16   Q    Did you ever observe any violence between them?
17        MS. BAGDASSARIAN:  Objection, relevance.  You can
18  answer.
19        THE WITNESS:  No.
20        MS. ESQUIVEL:
21   Q    After George left your home, did you see a change in
22  Jordan's demeanor as to whether he appeared depressed or sad?
23        MS. BAGDASSARIAN:  Objection, vague.  Lacks
24  foundation.  Calls for speculation.  Relevance.  You can
25  answer.

1        THE WITNESS:  I asked Jordan to leave also.
2        MS. ESQUIVEL:
3    Q   Why did you ask Jordan to leave?
4    A   I think that both Jordan and George were using alcohol
5   extensively, and Jordan knew that I wanted him to be sober if
6   he lived with me.
7    Q   During the time that George and Jordan were living
8   together in your home were they -- did you ever observe them
9   having parties at your home?
10       MS. BAGDASSARIAN:  Objection, relevance.  Vague.  You
11  can answer.
12       THE WITNESS:  Define parties, please.
13       MS. ESQUIVEL:
14   Q   Parties, social gathering with other people, having
15  drinks, having music, trying to have a good time?
16   A   No.  No parties in my home.
17   Q   Did you, again during the time that George and Jordan
18  with were living together in your home, did you ever see either
19  one of them drunk?
20       MS. BAGDASSARIAN:  Objection, calls for an expert
21  conclusion.  Lacks foundation.  Calls for speculation and
22  vague.  You can answer.
23       THE WITNESS:  Drunk, no.
24       MS. ESQUIVEL:
25   Q   Did either one of them when they were living together

```
 1   STATE OF CALIFORNIA    )
                            ) ss.
 2   SACRAMENTO COUNTY      )

 3           I, AMY JO TREVINO, a Certified Court Reporter in and

 4   for Sacramento County, State of California, do hereby certify;

 5           That on Thursday, February 9, 2023, at the hour of 1:30

 6   P.M. of said day, through audio visual transmission appeared

 7   MARY ELLEN LENNOX, who was duly sworn by me to testify the

 8   truth, the whole truth and nothing but the truth, and thereupon

 9   was deposed in the matter entitled herein;

10           That said deposition was taken in verbatim stenotype

11   notes by me and thereafter transcribed into typewriting as

12   herein appears;

13           That the foregoing transcript, consisting of pages 1

14   through 73, is a full, true and correct transcription of my

15   stenotype notes of said deposition.

16           DATED:  This 16th day of February 2023.

17

18                            _____
19                            AMY JO TREVINO, CSR #5296
```