LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
Benjamin S. Levine, Esq. (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone:    (818) 347-3333
Facsimile:    (818) 347-4118

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELLEN LENNOX, individually and as successor in interest to decedent Jordan Zenka,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 2:21-cv-02075-DAD-CSK<br><br>Assigned to:<br>*Honorable Dale A. Drozd*<br>*Honorable Mag. Judge Chi Soo Kim*<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE INFORMATION UNKNOWN TO DEFENDANT OFFICERS AT TIME OF INCIDENT**<br><br>Hearing:      None set<br>Courtroom:   4, 15th Floor<br>Trial Date:   February 18, 2025 |

# MEMORANDUM OF POINTS AND AUTHORITIES

I.  **ARGUMENT**

### A. Drug and Alcohol Evidence Unknown to the Officers Should be Excluded

In addition to opposing the instant motion *in limine*, Defendants have also moved *in limine* to admit evidence of alleged alcohol and/or drug use by Decedent Jordan Zenka on occasions prior to the subject incident and toxicology evidence [Dkt. 90], and Plaintiff incorporates by reference her opposition to that motion into this Reply. [*See* Dkt. 98.] As explained there, the Ninth Circuit has made clear that in excessive force cases that include wrongful death claims, "evidence of [the decedent]'s drug use" that was unknown to the defendant officers at the time they used force "has marginal, if any, probative value as to damages, and none as to liability." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) (reversing jury verdict and remanding for new trial where extensive evidence of drug use was admitted "under the guise of impeaching [a mother's] testimony that she loved her son"). Although Defendants argue that introduction of evidence of Mr. Zenka's previous drug or alcohol use is necessary to challenge Plaintiff's entitlement to wrongful death damages, this is the precise rationale that the Ninth Circuit proscribed in *Estate of Diaz*. *See id.*

Moreover, Defendants' opposition to the instant motion indicates that Defendants' intention, in challenging Plaintiff's claim to wrongful death and Fourteenth Amendment damages, is not merely to reference alleged prior drug or alcohol use to the extent it actually bore on Plaintiff's relationship with Mr. Zenka prior to his death, but rather to use such evidence primarily in an inflammatory manner to attempt to improperly prejudice the jury against Mr. Zenka and Plaintiff. *See* Defs.' Opp. to Pl.'s Mot. in Limine No. 1 at 3 (noting Defendants' intention to argue that Mr. Zenka was "a binge drinker, consuming a pint of vodka, in addition to other liquor, on a daily basis, that he stole from his mother to support his habit, [and] that he was diagnosed with amphetamine-type substance use disorder").[1] As the Ninth Circuit explained in *Estate of Diaz*,

---

[1] Defendants also rely on rehabilitation records which assert that Mr. Zenka stated that his mother had stated that she was "fearful of" him. However, this appears as an incomplete sentence at the bottom of the page, and Defendants have inappropriately omitted the subsequent page containing the remainder of the sentence, which reveals that Mr. Zenka clarified that he "realize[d] . . . that [his mother] is saying she is *scared [he]*

such evidence is "simply overkill" due to its inflammatory nature and is inappropriate in an unbifurcated trial, particularly where there is no evidence "that [Plaintiff] knew of . . . drug use on the day of the offense" or "that that knowledge undermined the emotional impact of her son's death." 840 F.3d at 601-02. Here, Defendants have identified no evidence showing that either was the case, either with respect to alleged drug use on the date of the incident or with respect to drug or alcohol use on previous occasions. *Estate of Diaz* also explained that in the face of such inflammatory evidence, and given the marginal probative value such evidence has (if any), even a limiting instruction is likely to be inadequate to cure the significant prejudice to Plaintiff, and that this is so notwithstanding the "presumption that jurors follow instructions." *Id.* at 603-04.

Defendants rely on *Crawford v. City of Bakersfield*, 944 F.3d 1070 (9th Cir. 2019), in claiming that evidence of drug and alcohol use are relevant to liability, notwithstanding the absence of any contention that the defendant officers were aware of it at the time of the incident.[2] (*See* Pl.'s Mot. in Limine No. 1 at 4-5 (explaining that information unknown to officers at time of incident may not be considered, and collecting cases articulating that standard and applying it to exclude drug, alcohol, and toxicology evidence).) However, *Crawford* did not address drug or alcohol evidence at all and so is inapposite. Rather, *Crawford* addressed evidence of mental illness and determined that evidence of prior mental health treatment "makes it more likely that [the decedent] continued to suffer from mental illness on the day of the shooting." 944 F.3d at 1078. But evidence that an individual has used drugs or alcohol on previous occasions is not probative of

---

*will get hurt or wont be okay*." (Emphasis added.) (The two pages of records showing the complete purported sentence by Mr. Zenka are attached hereto as **Ex. A**.) The complete statement negates any potential probative value of this alleged statement by Mr. Zenka, as Defendants' basis for seeking its admission is that it purportedly shows harm to Plaintiff's relationship with Mr. Zenka, when in fact it shows the opposite by demonstrating Plaintiff's concern for Mr. Zenka's welfare and Mr. Zenka's respect for Plaintiff and his concern for her peace of mind.

Further, these records and Mr. Zenka's alleged statement contained therein are hearsay within hearsay for which no exception applies. Although Defendants assert that Mr. Zenka's alleged statement is not hearsay and exceptions apply to it, they do not address the fact that the records themselves are separately hearsay. No evidence has been provided showing that these records fall within any hearsay exception, including evidence showing that the requirements of FRE 803(7)(B) are satisfied.

[2] In its order on summary judgment, this Court specifically found that it was "undisputed" that "[t]he officers did not have any prior information about . . . whether [Mr. Zenka] was under the influence of drugs or alcohol." (MSJ Order at 5 n.9, 7 [Dkt. 61].)

-2-
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE NO. 1

whether he has used drugs or alcohol on a separate and subsequent occasion, unlike how the fact that an individual has been diagnosed with a mental illness may be probative of whether he continued to be mentally ill subsequent to the diagnosis.[3] Moreover, as the Ninth Circuit explained in *Crawford*, the only reason the decedent's history of mental illness was even arguably relevant was because it ultimately bore on "whether [the officer] knew or should have known that [the decedent] was mentally ill," a factor the Ninth Circuit has recognized is relevant to the Fourth Amendment reasonableness analysis, whereas no such factor exists as to drug or alcohol use. *See, e.g., Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) ("indications of mental illness create a genuine issue of material fact about whether the government's interest in using deadly force was diminished."); *Glenn v. Washington Cnty.*, 673 F.3d 864, 875 (9th Cir. 2011) ("[A] circumstance relevant to our analysis is whether the officers were or should have been aware that [the decedent] was emotionally disturbed."); Ninth Cir. Model Jury Instr. 9.25 (listing, as one of multiple factors to be considered in reasonableness analysis, "whether it should have been apparent to the officer[s] that the person [he] [she] [other pronoun] used force against was emotionally disturbed," but listing no similar or other factor pertaining to drug or alcohol use) (brackets in original).

      Accordingly, *Crawford* does not support Defendants' position, particularly in light of *Estate of Diaz*, which addresses the specific issue of drug use. Even if *Crawford* did support Defendants' position, the fact also remains that Defendants have designated no expert qualified to opine "that [Mr. Zenka] was acting irrationally and could have been attributable to the narcotics rather than mental crisis," as Defendants acknowledge in their opposition they intend to argue at trial. (Defs.' Opp. to Pl.'s Mot. in Limine No. 1 at 4.) As noted in Plaintiff's motion, this evidence therefore is further inadmissible under FRE 702 because it is beyond the ken of lay witnesses (Pl.'s MIL No. 1 at 4 n.1), an issue Defendants have not addressed in their opposition. It is also speculative and thus is also inadmissible under FRE 602. The toxicology report in particular is also

---

[3] Even if prior drug or alcohol use were probative of whether an individual had used drugs or alcohol on a particular subsequent occasion, which it is not, such evidence would also be inadmissible character evidence under FRE 404(b).

inadmissible because Defendants cannot establish any foundation for its contents at trial, not having designated the toxicologist as a witness for trial.

### B. Prior Law Enforcement Encounters Unknown to the Officers Should be Excluded

Defendants also seek to introduce evidence that Mr. Zenka allegedly had previously been arrested under suspicion of vandalism,[4] despite making no contention that this was known by any of the defendant officers during the incident. (*See also* MSJ Order at 5 n.9, 7 [Dkt. 61] (finding it "undisputed" that "[t]he officers did not have any prior information about decedent Zenka's background [or] criminal history").) As explained in Plaintiff's motion, this evidence has no relevance to liability whatsoever. It also has marginal or no relevance to damages, contrary to Defendants' contentions, as Defendants have presented no evidence that this alleged arrest or the circumstances leading up to it "undermined the emotional impact of [Plaintiff's] son's death." *Cf. Estate of Diaz*, 840 F.3d at 601-02. And whatever marginal relevance it might have to damages is outweighed by the risk of unfair prejudice under FRE 403, in a trial in which liability and compensatory damages are not bifurcated, given the risk that a jury will improperly consider this history in deciding liability, even if a limiting instruction is given. It is further improper under FRE 404 in that the jury may improperly determine that Mr. Zenka's actions during the incident were somehow in conformity with a purported "bad character" as demonstrated by the prior alleged arrest.

### C. Writings, Drawings, and Books Purportedly in Mr. Zenka's Possession that Were Unknown to the Officers Should be Excluded

As indicated in Defendants' opposition to the instant motion, Defendants are agreeable to this evidence being excluded at trial.

/ / /

---

[4] Plaintiff's motion mistakenly included a footnote stating that the parties have stipulated to exclude reference to other potential criminal history besides this alleged vandalism incident. (Pl.'s Mot. in Limine No. 1 at 4, n.2.) Although Plaintiff is unaware of Mr. Zenka having had any other criminal history, and counsel for Defendants indicated during meet-and-confer efforts that no other criminal history would be at issue in this case, no stipulation on this issue has been filed, so Plaintiff's counsel apologize for the error.

**D. Mr. Zenka's Alleged Statements to Store Employees that Were Unknown to the Officers Should be Excluded**

In their opposition to Plaintiffs' Motion *in Limine* No. 2, which seeks to exclude evidence or argument regarding a potential "suicide by cop" theory, Defendants acknowledge that they intend to introduce testimony at trial from grocery store employees that Mr. Zenka allegedly stated—immediately after entering the grocery store, before any officers had arrived—that Mr. Zenka "needed to kill himself . . . and that he did not want to go to jail." (Defs.' Opp. to Pl.'s Mot. in Limine No. 2 at 2 [Dkt. 101].) Although in opposing the instant motion Defendants' argue that these alleged statements "are relevant to [Mr. Zenka's] state of mind and potential intentions," his state of mind and intentions are irrelevant where they were unknown to the officers, as explained in part in Plaintiff's Motion *in Limine* No. 2 [Dkt. 82], and in Plaintiff's reply in support thereof, which is being concurrently filed.

**II.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion in Limine No. 1.

Dated: February 7, 2025         LAW OFFICES OF DALE K. GALIPO

By:   */s/ Benjamin S. Levine*
Dale K. Galipo
Renee V. Masongsong
Benjamin S. Levine
Attorneys for Plaintiff

# EXHIBIT A

Melissa Tucker (Staff), 09/08/2020 06:25 PM

*[signature]*
Niccolette Ramsey, L.P.C. (Review), NPI Number 1891087581, 09/08/2020 10:03 PM

**Monday, Sep 7, 2020**

**PCTD Group Therapy Evening 07:30 PM PDT by Carol Bethard**

Status: attended

Start: 09/07/2020 07:30 PM
End: 09/07/2020 08:30 PM
Duration: 01:00

Topic
Group Check In/ The Brain and Substance Misuse

Individual Assessment/Intervention
JZ was present and participated in the beginning of group. JZ seemed to be agitated and anxious with nights event as evidence by not sitting for long and getting up to stand or pace during group. JZ got up before the end of group and did not come to a plan.

Group Description
How are you feeling mentally? emotionally? physically? spiritually? What triggers my strongest cravings? What triggers might I have that are very subtle? What can I tell myself about craving in a matter-of-fact way? When are some times that I was or am able to resist cravings? How was I able to do that? What might be some additional behavioral strategies that I can use when I have an episode of craving?

*[signature CAB]*
Carol Bethard (Staff), 09/07/2020 10:19 PM

*[signature]*
Niccolette Ramsey, L.P.C. (Review), NPI Number 1891087581, 09/08/2020 10:02 PM

**Tuesday, Sep 8, 2020**

PCTD Group Session Afternoon 12:30 PM PDT by Melissa[?]
Status: attended

Topic
We started with a MEPS check in. Talked about when dealing with stress and anxiety with the [illegible] present. We ended by discussing the science of [illegible] and [illegible] of continuing to [illegible] the [illegible] and we feel healthy.

Individual Assessment/Intervention
Client was present for entire group. Client [illegible]

**Sunday, Sep 6, 2020**

**PCTD Group Session Evening 08:00 PM PDT by Carol Bethard**

Status: attended

Start: 09/06/2020 08:00 PM
End: 09/06/2020 09:15 PM
Duration: 01:15

Topic
Check in and Gratitude

Individual Assessment/Intervention
JZ was present and participated in group. JZ seemed to open up more tonight saying, "I feel like I am being more honest than I have before because I feel safe here. Before I have always watched people trying to see what they are trying to take or how they are trying to take advantage of me." JZ also reflected on a new thought about his mother and her worries for him saying, "My mom has told me before that she is fearful of me and I always thought is was weird because I was never going to hurt her,

but I realize tonight that she is saying she is scared I will get hurt or wont be okay." JZ has a plan to practice being open and honest while here in detox.

**Group Description**

How are you feeling mentally? emotionally? physically? spiritually? What are you grateful for today? What are actions you can take to show your gratitude?

*CAB*

Carol Bethard (Staff), 09/06/2020 10:42 PM

*Nicci Bunyea*

Niccolette Ramsey, L.P.C. (Review), NPI Number 1891087581, 09/07/2020 07:53 PM

**Sunday, Sep 6, 2020**

PCTD Group Session Afternoon 02:00 PM PDT by Angie Muller, C.R.M., P.S.S.
Status: attended

Start: 09/06/2020 02:00 PM
End: 09/06/2020 04:00 PM
Duration: 02:00

**Topic**

Seeking safety: Red Flags/Green Flags

**Individual Assessment/Intervention**

Client participated as evidenced by engaging in topic based discussion.

**Group Description**

Group focus in identifying dangerous behaviors and creating safe behaviors. Started group w/ a check in and introduction of group topic. Clients made lists of behaviors that can lead to relapse and countered those behaviors with making a safety plan. Ended group with a check out w/ a commitment.

*AM*

Angie Muller, C.R.M., P.S.S. (Staff), 09/06/2020 03:33 PM

*Nicci Bunyea*

Niccolette Ramsey, L.P.C. (Review), NPI Number 1891087581, 09/07/2020 07:54 PM

**Saturday, Sep 5, 2020**

PCTD Group Session Evening 08:00 PM PDT by Carol Bethard
Status: attended

Start: 09/05/2020 08:00 PM
End: 09/05/2020 09:15 PM
Duration: 01:15

**PLTF 0061**